563 A.2d 479

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James L. STRONG, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1987.

Decided July 26, 1989.

446

448

449

Joseph L. Vullo, Wilkes Barre, for appellant.

Bernard A. Podcasy, Dist. Atty., Joseph C. Giebus, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

A jury convicted appellant, James Strong, of murder in the first degree,[1] kidnapping,[2] robbery,[3] theft of an automobile,[4] and theft of personal property valued at $200.00 or more.[5] A separate penalty hearing was held for the first degree murder charge in accordance with Section 9711 of the Sentencing Code.[6] The jury unanimously found three aggravating circumstances and no mitigating circumstances, and accordingly sentenced appellant to death. Post-verdict motions were denied and the appellant was formally sentenced to death. He also received the following sentences on the lesser included offenses: kidnapping—a consecutive sentence of twenty year maximum and ten year minimum; robbery—a consecutive sentence of twenty years maximum and a ten year minimum; theft of an automobile—a consecutive sentence of seven years maximum and

1.  18 Pa.C.S. § 2502(a).
2.  18 Pa.C.S. § 2901.
3.  18 Pa.C.S. § 3701.
4.  18 Pa.C.S. § 3903.
5.  18 Pa.C.S. § 3903.
6.  42 Pa.C.S. § 9711, Act of September 13, 1978, P.L. 756, No. 141, § 1, *imd. effective;* 42 Pa.C.S. § 9711.

three and one-half year minimum; theft in excess of $200.00 —no sentence imposed.

The appellant pursued a direct appeal to this Court from the judgments of sentence.[7] Eleven (11) assignments of error are raised which will be addressed after first examining the sufficiency of the evidence.

## I. SUFFICIENCY OF THE EVIDENCE

Although appellant does not directly challenge the sufficiency of the evidence supporting his murder conviction, it is nonetheless the practice of this Court to review the sufficiency of the evidence in death penalty cases regardless of whether the issue is contested. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27, n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

The applicable standard in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). If the evidence offered by the Commonwealth at trial was legally posited, as we hold, and accepted by the jury, as it was, it can lead to no conclusion other than guilty as charged.

According to that evidence, Mr. John Henry Strock, Jr., age fifty (50) risked the danger of kindness to strangers and lost. He picked up two hitchhikers and had his head blown off with a shotgun. The inculpation of the appellant was given by one James R. Alexander, eyewitness and companion in crime. He told how he and appellant were hitchhiking on Rt. 81 in Greencastle, Pennsylvania, and how Mr. Strock pulled over and offered a ride. The two got in, Alexander in the front seat and the appellant in the back.

---

7. See 42 Pa.C.S. § 722(4), Act of 1980, October 5, P.L. 693, No. 142, section 216(c), effective December 5, 1978 and 42 Pa.C.S. § 722(1), Act of 1980, October 5, P.L. 693, No. 142, section 216(c), effective December 5, 1980.

While proceeding along Rt. 30 the appellant produced a .20 gauge shotgun and put it on Mr. Strock's shoulder. Taking possession of the car, they rode awhile, Alexander driving, and when they stopped to relieve themselves, the appellant took Mr. Strock to the gulley and shot him. When Alexander heard the shot and a scream he saw appellant standing over Mr. Strock who was lying face down. Alexander asked the appellant why he shot Mr. Strock and he replied "I am tired of leaving witnesses behind." Appellant then offered the gun to Alexander and told him to shoot Mr. Strock in the head. Alexander declined, but at appellant's request removed Mr. Strock's wallet. Alexander then heard another shot, that evidence showed, blew Mr. Strock's head off his body. When appellant was captured he had Mr. Strock's license in his possession, and there was testimony that appellant intended to use this license as false identification. Mr. Strock's life was only a ticket for appellant's further passage: as events proved, but a small distance.

We are satisfied that the evidence was sufficient to sustain the jury's verdict of guilty on the charge of murder in the first degree.

## II. PRE–TRIAL RULINGS

■ Appellant first argues that the trial court erred in denying his motion *in limine* to exclude or prevent the Commonwealth from impeaching him by use of his prior criminal record.

Appellant's record included a conviction for robbery and auto larceny in 1969, and two additional convictions for robbery, the most recent of which occurred in 1975. The motion was denied in part by the trial court, which allowed the prosecution to impeach the credibility of appellant through the use of his most recent robbery conviction.

We have recently held that "evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of

conviction or the last day of confinement is within ten years of the trial date." *Commonwealth v. Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987). As appellant's robbery conviction in 1975 involved an element of dishonesty tending to discredit him as being untruthful, *Commonwealth v. Perrin*, 484 Pa. 188, 398 A.2d 1007 (1979), and as appellant falls squarely within the ten year time frame, we are satisfied that no error was committed by the trial court in allowing the admission of the 1975 conviction.

## III. ASSERTED TRIAL ERRORS

■ Appellant asserts that error was committed by the trial court through the admission of certain photographs into evidence. The first allegation of error pertains to a pre-death photograph of the victim. This particular piece of evidence, which was found on appellant, was offered by the Commonwealth to establish the identity of the victim: it was presented to the victim's father in furtherance of that particular objective.

We have held that pre-death photographs of a victim can be admitted if they are relevant to a determination of guilt or innocence, *Commonwealth v. Green*, 488 Pa. 611, 615, n. 2, 413 A.2d 651, 656 n. 2 (1980); and that the admission of photographs is largely within the discretion of the trial court, the rulings of which will not be overturned on appeal unless there is an abuse of that discretion. *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). In this case the identity of the victim was arguably at issue, in that the rate of decomposition had made fingerprint analysis impossible, causing initial identification to be based on dental x-ray comparisons. However, even if we agreed with appellant's contention that the admission was erroneous, appellant must still demonstrate that the error was prejudicial.

In *Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983), we held that an error may be harmless where the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the error is insignificant by compar-

ison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

In this case the Commonwealth's primary evidence consisted of appellant's partner, who not only saw the victim after he had been shot, but removed his wallet at the direction of the appellant. Additionally, when arrested, appellant had in his possession the victim's belongings.[8] We also note that the picture which was introduced was that contained on the victim's drivers license, and its introduction was not accompanied by a recitation of the victim's family life, as was the case in *Commonwealth v. Story, id.* As in our decision in *Commonwealth v. Mehmeti, supra,* we are satisfied that the introduction of this photograph, even if it was erroneous, was harmless beyond a reasonable doubt.

■ Appellant next takes issue with the introduction into evidence of several post-mortem photographs of the victim. To determine whether such photographs are admissible, we have utilized a two-tiered analysis. The trial judge must initially decide whether the photographs possess inflammatory characteristics. If they do not the photographs are admissible as are any evidentiary items, subject to the qualification of relevance. If the photographs are deemed inflammatory, then the trial judge must decide whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of their inflaming the passions of the jurors. *Commonwealth v. Hudson*, 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980).

■ These black and white photographs depicted the shooting scene and the victim's body. In the photographs

8. As noted, *infra,* the picture in question was from the victim's drivers' license, which was taken from appellant while he was in custody. Testimony from Mr. Alexander indicated that the victim may have been killed for the sole purpose of acquiring his identification, as appellant was wanted for parole violation. Had the Commonwealth argued for the introduction on the basis that it was the incentive for the shooting, or that the possession of it linked appellant to the victim, its introduction would certainly have been relevant.

454

the body was covered by vegetation and debris and the pictures were neither very clear or graphic. As they were relevant in establishing the location of the shooting and the condition of the body when it was found, their admission was not error.

■ Appellant next contends that during his trial several acts of prosecutorial misconduct were committed. The first is said to have occurred during closing arguments when a statement was made with regard to the Commonwealth's key witness, accomplice James Alexander. The district attorney said: "I tell you ladies and gentlemen, there were absolutely no promises made to him." (N.T.1890). Appellant argues that this statement was an attempt to bolster the credibility of their key witness.

Generally, "comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. McNeal,* 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). As the outcome of this weighing process rests with the trial court our inquiry of necessity must turn to whether an abuse of discretion was committed. *Commonwealth v. Simon,* 432 Pa. 386, 248 A.2d 289 (1968).

The remark in question was in response to a direct attack upon the witness' credibility. That attack took the form of the following comments.

Let's look at James Alexander. Here's a guy on the stand, he's charged with murder, robbery, kidnapping and theft. Observe his demeanor on the stand. He's a guy who told you he had no deal, no deal. Do you believe it? Do you believe it by the way he testified. Did he look concerned, did he look worried about being faced with the charge of murder? You decide. That's for you to decide but recall the way he testified from that stand. Did he look concerned about it? Was he worried about it? Did

he look like somebody who said, hey, baby, I'm home free, I don't have a care in the world?

N.T. 1858–1859. The obvious intent of these remarks was to put the idea in the minds of the jurors that some deal had been struck between the Commonwealth and its chief witness. Certainly the prosecution was entitled to respond to these comments, and the retort was both proper and necessary. Accordingly, we are satisfied that there was no abuse of discretion in the trial judge's refusal to grant a mistrial.

■ We are similarly satisfied that the next challenged statement made by the district attorney was not an example of prosecutorial misconduct. The statement was that "James Alexander told the whole ugly truth." Though petitioner argues this statement prejudiced him in the eyes of the jury we are inclined to agree with the trial court's classification of the statement as "an appropriate comment." A shotgun killing of an innocent man is certainly, among other things, an ugly event, and the prosecutor's description as such was not inaccurate.

■ Appellant's final assertion of prosecutorial misconduct is directed at the Commonwealth's closing argument during the penalty phase of the trial. During their testimony appellant's parents had attested to the good character of their son. In his closing the following statement was made by the prosecutor.

The Strongs testified that James Strong was a good person, and what did you expect of them? I'm sure his parents are fine people, no doubt in my mind about that. But remember, they're not on trial. James Strong is on trial.

And remember, everyone at one time or another had parents. Atilla the Hun had parents. Adolph Hitler had parents. Every murderer that ever set forth on this earth had parents.

Appellant argues that reference to these notorious figures during the penalty stage of the trial had the effect of inflaming the passions of the jury by likening appellant to

those figures. For authority he relies upon cases wherein new trials were granted when the defendant was characterized as an "Al Capone", *Commonwealth v. Valle*, 240 Pa.Super. 411, 362 A.2d 1021 (1976), and as a "Pontius Pilate" and "Judas Iscariot," *United States v. Steinkoetter*, 633 F.2d 719 (6th Cir.1980).

We note at the outset that discussing such characterizations are not new to this Court. In *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986), the prosecutor also made reference to Adolph Hitler. In determining whether such a reference tended to inflame the passions of the jurors we looked to the context in which the comparison was made. Here the names of these figures were employed to dilute the potentially mitigating testimony of appellant's parents. The logical implication of the prosecutor's remark was that fine parents are capable of producing murderous off-spring, which is not, we are sad to say, a novel proposition. We are satisfied that in the context of this case the statement was an allusion and not a direct comparison. We further decline to adopt the view that a prosecutor's argument during the penalty stage should be a sterile affair. Many cases are sordid, mordant tales and their very description are librettos for threnodies of death and loss. To tell their story is to inevitably touch human emotions, because they are about human things: sad, terrible, alien human things. They cannot be left undescribed because they are terrible or alien to ordinary human standards of conduct. They are the issue in question and unless one transcends the evidential terms or deliberately calculates to do what the evidence does not support, they must be told and whatever human emotions they may awake are inescapable in the context of the truth of the occasion. *See Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Whitney, supra.*

## IV. SENTENCING PHASE

Appellant next asserts that the death sentence imposed upon him should be vacated due to various errors that occurred during the penalty phase of the trial.

■ He first argues that the trial court committed error when it permitted the Commonwealth to argue as an aggravating factor that the victim was a Commonwealth witness to a felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in a grand jury or criminal proceeding involving such offense. 42 Pa.C.S. § 9711(d)(5).

The Court has previously held that under § 9711(d)(5), evidence must be introduced to prove that the victim was a prosecution witness who was killed to prevent his testimony in a pending grand jury or criminal proceeding; and that the burden of the Commonwealth will not be met by simply showing that an individual who witnessed a murder or other felony committed by a defendant was also killed by the defendant. *Commonwealth v. Crawley,* 514 Pa. 539, 561, 526 A.2d 334, 345 (1987). *See Commonwealth v. Caldwell,* 516 Pa. 441, 448, 532 A.2d 813, 817 (1987).

Recently this rule was amended so as to permit "a finding of the existence of this particular aggravating circumstance where the killing results from the intention to eliminate a potential witness, if such facts can be established by direct evidence." *Commonwealth v. Appel,* 517 Pa. 529, 539 A.2d 780, 784 n. 2 (1988).

Applying this reasoning to the case at bar it is clear that Mr. Strock was killed to prevent him from reporting the fact that he was robbed. Mr. Strong's avowed purpose in killing Mr. Strock became evident when he stated to his co-defendant, James Alexander, that he was "tired of leaving witnesses behind." Therefore the jury's finding of an aggravating circumstance pursuant to § 9711(d)(5) was not contrary to the weight of the evidence.

■ Appellant next contends that the evidence does not support a finding that he had a significant history of felony convictions involving the use or threat of violence to the person. 42 Pa.C.S. § 9711(d)(9). The felony convictions introduced as an aggravating circumstance were: assault, robbery and auto larceny in 1969; assault and robbery with a deadly weapon in 1970; and robbery in 1975. The 1969

458

conviction involved a fact pattern almost identical to that of the present action. Clearly, on this record there was sufficient evidence of previous felony convictions to submit to the jury, and that the jury's finding of an aggravating circumstance in this regard was not error. Furthermore, appellant's contention that the term "significant history" contained in 42 Pa.C.S. § 9711(d)(9), is overly broad, is also meritless as we have previously rejected this challenge in *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986).

Appellant also contends that the language contained in § 9711(d)(6) is unconstitutional because it is overly broad. The specific section provides for the assessment of an aggravating circumstance if the jury finds "the defendant committed a killing while in the perpetration of a felony." 42 Pa.C.S. § 9711(d)(6). We have previously rejected this challenge in *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986). Therefore, appellant's argument requires no further discussion.

Appellant next contends that the trial court committed error in failing to grant his request to terminate the proceedings, and in failing to impose a sentence of life imprisonment after the jury submitted the following question during deliberations at the penalty phase: "Would life imprisonment result in the possibility of parole at any time." (N.T. 2047). In response the trial court stated:

I will not answer the question that you have sent to me except to tell you that your responsibility in this case is statutorily limited to deciding the presence or non-presence of any aggravating factors or any mitigating factors, and no other factors unless it falls within the mitigating factor listed as No. 8 is to be considered by you.

You will decide in this case whether the Commonwealth of Pennsylvania has proved beyond a reasonable doubt any one of the three aggravating circumstances. If you find that they have not, the sentence must be life. If you find that the Commonwealth has proved beyond a reasonable doubt one or more aggravating circumstances, then

you will determine whether or not there is proof by a preponderance of any one of the eight (8) enumerated mitigating circumstances and if you find that any one of those eight (8) have been established, then it is your responsibility to weigh them one against the other.

If when you weigh them, the aggravating circumstance or circumstances outweigh the mitigating circumstance or circumstances, then the sentence must be death.

If you find an aggravating circumstance or circumstances and you find a mitigating circumstance or circumstances and you find that the mitigating circumstances outweigh the aggravating, then, again, the sentence must be life. That is the law and it is on that basis and that basis alone that you shall determine and set the verdict in this case. Once again, ladies and gentlemen, on the basis of the instructions as I have given them to you, you will return to the jury room, continue deliberations in hopes of unanimously agreeing upon responses to the questions that have been submitted to you.

Whenever you agree upon a sentencing verdict, whatever it is, it shall be received and recorded by the Court and you are instructed that the Court shall thereafter impose upon the Defendant the sentence fixed by the jury.

With those instructions, you shall return to the jury room.

Appellant argues that the refusal of the trial court to answer the jury's question left an impression in the jury's mind that if life imprisonment were imposed there would be possibility of parole, thus this response prejudiced any chance of the jury returning a verdict of life imprisonment.

In *Commonwealth v. Johnson*, 368 Pa. 139, 81 A.2d 569 (1951), a case strikingly similar to the present case, we set forth the nature of the required response. There we said "that whether the defendant might at any future time be pardoned or have his sentence commuted is no concern of their's and should not enter in any manner whatsoever into their consideration of the proper penalty to be imposed, which should be determined solely in the light of the relevant facts and circumstances as they then existed." *Id.*,

368 Pa. at 148, 81 A.2d at 573. While the response given by the learned trial judge was not as concise as that suggested by us in *Johnson supra*, it did stress to the jurors that the future possibility of parole was not to enter into their decision process, and therefore was an adequate response.

■ Appellant next argues that the trial court erred in not granting his motion for a mistrial based upon pre-trial statements made by the district attorney which were in violation of a gag order.

The particular comments in issue appeared in an article printed in the October 7, 1984, edition of the *Citizens' Voice*, a local newspaper. The comments appeared after the commencement of jury selection and after several jurors had been selected. In the article the district attorney made mention of appellant's attempt to fight extradition to Pennsylvania. The comments were made in a commentary regarding an unrelated case. In an attempt to counteract the district attorney's indiscretion, the trial court gave counsel for defendant the option of conducting another *voir dire* examination of those jurors already selected, with the right to challenge for cause any juror who had read the article. Defense counsel and defendant were given the entire evening to accept or reject this option. The offer was rejected, and the majority of the remaining prospective jurors indicated that they were not sure whether they had read the article, and said that if they had they were not influenced by it.

We are satisfied that no prejudice resulted to appellant through the violation of this pre-trial order by the district attorney.

■ Appellant next contends that the trial court erred in appointing an investigator from the public defender's office to assist him, as opposed to a private investigator. The record reveals that petitioner's limited financial resources precluded him from independently securing the services of a private investigator. An investigator was requested in order to locate alibi witnesses. To aid petitioner the court

appointed an investigator from the public defender's office. As this investigator was from the same office that ultimately would be defending co-defendant James Alexander, petitioner argues there was a conflict of interest. Petitioner does not allege that the services provided by the investigator were lacking; nor does he allege that the investigation was conducted with an eye towards impacting on the representation of James Alexander.

We begin our analysis of this issue by first stating that there is no requirement on the part of the Commonwealth to furnish investigative services at the Commonwealth's expense. *Commonwealth v. Box*, 481 Pa. 62, 391 A.2d 1316 (1978). Secondly, although we have held that the public defender's association is considered to be a law firm, and that representation of multiple clients with inconsistent defense would result in a conflict of interests *Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979), we are not prepared, for conflict of interest purposes, to analogize the services of an investigator to those of an attorney. To do so would be to stretch the scope of the rule beyond the legitimate purposes for which it was intended.

Appellant also argues that the sentences imposed by the lower court, with regard to the lesser included offenses, were illegal because they were beyond those set forth in the sentencing guidelines. As these guidelines were held unconstitutional by us in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987), this argument is without merit.

## V. CONSTITUTIONALITY OF THE DEATH PENALTY STATUTE

Appellant next contends that the trial court erred in denying his pretrial motion to bar imposition of the death penalty. In this argument appellant launches a thirteen (13) point assault upon the constitutionality of our death penalty statute. 42 Pa.C.S. § 9711 *et seq.* He alleges the statute is unconstitutional because:

462

(1) The required finding that aggravating circumstances outweigh any mitigating circumstances is so vaguely phrased as to allow totally unguided discretion to the jury and introduces an element of arbitrariness of decision which violates the Eighth and Fourteenth Amendments to the United States Constitution in their provisions against cruel and unusual punishment and in violation of defendant's rights to due process and equal protection of law in sentencing procedures. (2) The Statute is unconstitutional in requiring a defendant to prove mitigating circumstances by a preponderance of the evidence. (3) The Statute unconstitutionally makes the death sentence mandatory whenever a jury finds single aggravating circumstance which "outweighs" any mitigating circumstances. (4) The aggravating circumstances relating to commission of a killing is vague as applied to the facts of this case. (5) The Statute fails to provide meaningful historical proportionality review in light of the inapplicability of any death penalty in Pennsylvania from 1967 to 1978. (6) The Statute fails to provide meaningful participation by defendant in any proportionality review and fails to provide other proper procedures for such determination. (7) The imposition of the sentence of death by electrocution is cruel and unusual punishment because of the unnecessarily excessive infliction of physical pain. (8) The imposition of the sentence of death under the present statute is unconstitutionally arbitrary and capable of whimsical application because it imposes no limitation upon the exercise of prosecutorial discretion in electing to demand the death penalty in a given case even if aggravating factors are present. (9) The imposition of the sentence of death under the Pennsylvania Statute is arbitrary because Pennsylvania murder trial procedure allows the jury to return a verdict of voluntary manslaughter without evidence. (10) The imposition of the sentence of death is cruel and unusual punishment because it violates current societal standards of decency. 11) The application of the aggravating factor described as "the defendant committed a killing while in the perpetration of a felony" under

42 Pa.C.S.A. Section 9711(d)(6) is unconstitutionally vague, confusing and arbitrary because of its confusing similarity to the definition of second degree murder in 18 Pa.C.S.A. Section 2502(b). (12) The Statute represents an unconstitutional infringement by the legislature of the separation-of-powers. (13) 42 Pa.C.S.A. Section 9711(b) permits a defendant by pleading guilty (to murder generally) or waiving trial by jury to secure a trial on the issue of degree of guilty (plea) or guilt itself (waiver) before a finder of fact (i.e., the presiding judge) who is not necessarily death prone or as to whom the Commonwealth has no right to "death qualify".

All but one of these challenges has been previously addressed and rejected by this Court. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh. denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983 and *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984) *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984); *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). Therefore, a reiteration of our reasoning in these cases would accomplish little.

Appellant's unique constitutional attack is that 42 Pa.C.S. § 9711(b) is unconstitutional in that it permits a defendant by pleading guilty to murder generally, or waiving trial by jury, to secure a trial on the issue of the degree of guilt, or guilt itself, before a finder of fact who is not necessarily death prone, or as to whom the Commonwealth has no right to "death qualify". As such he argues this is a denial of equal protection of the law. Appellant takes this argument one step further by hypothesizing that the above constitutional infirmity could have been rectified in the instant action had two separate juries been empaneled, one for the guilt stage and the other for the penalty stage of the proceeding.

We begin by disagreeing with appellant's liberal paraphrase of 42 Pa.C.S.A. § 9711(b). This section applies to a

defendant's plea of guilt to first degree murder. It does not apply to a plea of murder "generally". Indeed, if one were to plead guilty to murder "generally", there would be a trial, either by a judge or jury, to establish the degree of guilt, e.g., first degree murder or third degree murder. Secondly, we disagree with petitioner's contention that one is denied equal protection by requesting a jury, which would be "death qualified," as opposed to requesting a trial by a judge, who would not be explicitly "death qualified".

It is important to emphasize that the death qualification of the jury is not for the purpose of assembling a conviction prone and/or death prone body. Rather the purposes is intended to ensure that the full letter of the law will be upheld if the circumstances so require. A judge by definition is sworn to uphold the law pursuant to the oath of office; and, consequently he or she is duty bound to impose the death penalty should the circumstances so dictate. Therefore, we see no unequal treatment accorded to defendants who elect a jury trial.

Appellant next argues that the trial court committed error in sustaining the Commonwealth's challenge for cause of six prospective jurors on the basis that they could not vote for the death penalty. Appellant alleges that the trial court's ruling deprived him of a fair and impartial jury, and resulted in the selection of a panel more likely to convict.

Under federal constitutional law this very argument was addressed and rejected by the United States Supreme Court in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Additionally, as a matter of state constitutional law, this court has declined to afford an accused greater protection in this instance than that which is mandated by the federal constitution. *Commonwealth v. Peterkin*, 511 Pa. 299, 320, 513 A.2d 373, 384 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987), *Commonwealth v. Sneed*, 514 Pa. 597, 605, 526 A.2d 749, 753 (1987). Accordingly, as we have adequately disposed of this issue on several previous occasions, further discussion is not warranted.

## VI. PROPORTIONALITY REVIEW

█ Finally, we turn our attention now, as we must, to the proportionality of appellant's sentence. Because the jury found no mitigating circumstances and three aggravating circumstances have been upheld, we sustain the conviction and affirm the sentence of death. Based upon our review of the statistical data provided by the Administrative Office of the Pennsylvania Courts, *see Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984) *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we conclude that the sentence of death was not disproportionate to the penalty imposed in similar cases.[9] 42 Pa.C.S. § 9711(h)(3)(iii).

HUTCHINSON, former Justice, did not participate in the decision of this case.

ZAPPALA, J., files a dissenting opinion in which NIX, C.J., joins.

ZAPPALA, Justice, dissenting.

I must register my strenuous dissent to the determination reached by a majority of this court today allowing Appellant's nine-year old conviction for robbery to be used against him for purposes of impeachment. The application here of the per se rule first announced in *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987), demonstrates in and of itself the absurdity and lack of logic inherent in the operation of such a rule and necessitates the restoration of the *Bighum–Roots* principle to our jurisprudence.

That the majority gives little attention or analysis to the impeachment issue in this case, one in which the imposition of the death penalty is sought, is indicative of the almost complete lack of comprehension of the prejudicial implications of introducing the mere fact of prior criminal acts, ostensibly to "impeach" the credibility of the defendant-witness. In abandoning the balancing approach of *Bighum–Roots*, which, for all its perceived shortcomings, pro-

---

9. The Prothonotary of the Supreme Court is directed to forward the complete record of this case to the Governor's Office for his review.

vided a meaningful inquiry into the need for and relevance of such facially prejudicial evidence, as well as guidelines for its use, the majority has substituted a rule which, under the guise of simplicity, has injected a different and more dangerous measure of uncertainty and prejudice to any criminal defendant who has been previously convicted of a criminal offense.

*Randall,* while claiming to simplify this issue by providing "concrete guidelines for the admission of prior conviction evidence", 528 A.2d at 1328, has, in my humble opinion, effectively "severed the head because the nose would not stop bleeding," in its adoption of a per se rule, akin to F.R.E. 609(a)(1), (2) which favors admissibility.

The majority fails to consider that the approach taken is not legislatively favored in this Commonwealth. Indeed, the policy against using prior convictions against a criminal defendant is codified at 42 Pa.C.S. § 5918 which provides:

> **§ 5918. Examination of defendant as to other offenses**
> No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:
>
> (1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or
>
> (2) he shall have testified at such trial against a codefendant, charged with the same offense.

The policy behind the above statute was succinctly expressed by Chief Justice (then Justice) Nix in *Commonwealth v. Gullett,* 459 Pa. 431, 329 A.2d 513, 517–18 (1974), when he stated:

> The reason for the rejection of this evidence is not because it fails to have any probative value on the proba-

bility or the accused's guilt but rather that the presumed effect is to predispose the minds of the jury to an extent that it would unduly overshadow the presumption of innocence.

The rule announced in *Randall* is totally contrary to these policy considerations and permits the prosecution virtual carte blanche to do indirectly, under the guise of impeachment, what § 5918 prohibits it from doing directly—introducing evidence of prior crimes to infer the truth of present criminal allegations. It would be unfair to make this statement, however, without setting forth the underlying rationale for making it.

While the majority in *Randall* vindicate their position as necessary to end the uncertainty of litigation and to reduce the number of appeals based on this issue, the opposite result has obtained. As *stated,* the per se rule requires two determinations prior to the introduction of this evidence. First, there is a requirement that the conviction sought to be introduced must involve dishonesty or false statement, crimen falsi. Second, the conviction date, or the last date of confinement, must be less than ten years from the date of trial. If these requirements are met, the offense is per se admissible. If not, the trial judge must then apply a balancing test and determine whether the value of the evidence substantially outweighs its prejudicial effect. *Randall,* 528 A.2d at 1329.

As *applied,* however, the prosecution has only one hurdle to overcome—the ten year hurdle. This hurdle becomes lower when one examines the ten year language. As stated, the ten year period runs from *the date of conviction or the last day of confinement.* In effect this period can be far greater than the stated ten years since, once convicted, the time of incarceration becomes the starting point for determining the run date.

Considering the disappearance of the first hurdle, that the conviction be one of crimen falsi, it is clear from the majority's analysis of the facts of the instant case that this requirement has been totally dispensed with. Since the

*Randall* majority did not facially overrule the *Bighum–Roots* requirement that the conviction be one involving crimen falsi, I would assume it axiomatic that the Commonwealth is still put to the burden of demonstrating the crimen falsi nature of the conviction. Unless all crimes are now deemed crimen falsi, or the term is limited to the traditional notions of crimen falsi, i.e. perjury, false swearing and embezzlement, the record of a conviction does not itself provide the underlying factual premise to establish the crimen falsi nature of an offense. In the case before us, however, the Commonwealth failed to present *any* evidence of the dishonest nature of the offense, and thus, even assuming, arguendo, that the *Randall* rationale were valid, its requirements were not met. The effect of this is to allow the jury to hear the Clerk of Courts state that the defendant was previously convicted of an offense, and nothing as it relates to how this testimony affects the defendant's credibility.

A review of the handling of the impeachment issue before the trial court clearly reveals that the requirements of *Bighum–Roots*, unquestionably operant at the time of trial, were ignored by both the Commonwealth and the trial judge. It is this total failure to meaningfully evaluate the prior conviction at the suppression hearing that evinces a complete denial of Appellant's due process rights under then existing precedent. To now attempt to validate that denial by applying a new and different standard is unacceptable. While this jurisdiction has not clearly delimited the principals of application as to the prospectivity or retroactivity of a new change in existing evidentiary or procedural rules in situations such as the present, it is clear that court which have done so, most notably the U.S. Supreme Court, have required, in most instances, prospective application of new changes, with retroactive application being the exception. *See,* generally, *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 16 L.Ed.2d 601 (1965); *Michigan v. Payne,* 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973); *See especially, Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), *Stovall v. Denno,* 388 U.S. 293, 87

S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Where retroactive application has been applied, it has been to *benefit* a defendant by allowing him the protection of an enlargement in a constitutional principal. Application of the *Randall* rule, in contrast, has the repugnant effect of not only forcing Appellant to conform to a standard that was not applicable at the time he was tried, but also to see the correctness of his appellate assertion fail, not because he is wrong in his theory of the law, but rather because the rule of evidence upon which he justifiably relied at trial has been altered, and evidence not admissible at that time has now become post facto valid. This is an affront to due process.

In *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), we placed upon the Commonwealth the initial burden of showing that the need for using prior conviction evidence to impeach a defendant outweighed the inherent prejudice to the defendant. We stated, "[w]e do not assume the admissibility of this impeachment evidence absent a substantial showing of prejudice by the defendant. Rather, *the burden is upon the prosecution to show that the need for this evidence overcomes its inherent potential for prejudice.*" *Id.* 482 Pa. at 40–41, 393 A.2d at 368. (Citations omitted) (emphasis supplied).

At the suppression hearing, Appellant requested that the court prohibit the Commonwealth from using a prior robbery conviction approximately nine years old, involving the theft of an automobile and the robbery of an individual therein. He argued that the evidence would be highly prejudicial in that the similarity of the prior conviction to the allegations in the instant case would allow the jury to draw an unwarranted inference of guilt. When asked to respond to this allegation the Commonwealth declined and stated to the court that it would rely upon its brief. That brief is not contained in the record, nor is any other record showing by the Commonwealth present. I can therefore only conclude that the Commonwealth has indeed failed to meet its burden.

Even assuming that the Commonwealth had met its initial burden, it was then the duty of the trial court to apply the remainder of the *Roots* analysis, 482 Pa. at 39–40, 393 A.2d at 367. This was not done. In reviewing these factors, the trial court must carefully evaluate the competing interests rather than merely recite the five factors verbatim. We held that "... [t]here must be a *meaningful exercise of discretion* in these cases and that the former per se rule of admissibility has been expressly repudiated." *Id.*, 482 Pa. at 39, 393 A.2d at 367 (emphasis added). In the instant case, it is clear that no *meaningful* review of the factors was undertaken. To illustrate this, I set forth the review of the relevant factors, and the disposition of each by the trial court. As to factor No. 1, the Court stated:

THE COURT: The law, I think, is relatively clear, I'm supposed to consider certain factors in determining how justice balances out and what is fair.

The factors are, first, the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness. It is my understanding that the Commonwealth, if permitted, would use the conviction in 1975 for the offense of burglary, larceny of a vehicle?

MR. PILLETS: That is correct, your Honor.

THE COURT: And obviously those crimes have been construed in this Commonwealth to constitute appropriate offenses for impeachment purposes ...

N.T. Vol. 1, pp. 307–08.

As can be seen, there was absolutely no discussion or analysis relative to the weighing of this factor. Instead it is clear that the trial court merely relied upon the offense's per se admissibility based upon prior court decisions, not quoted or cited, which may or may not have involved other factors more directly affecting credibility.

As to the second factor, the court stated:

THE COURT: Second, a likelihood in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which

he stands charged rather than providing a legitimate reason for discrediting him as an untruthful person.

Again, it is my understanding that the defendant has a record of, in addition to these offenses, of three armed robbery, or three robbery convictions, at least one of which was armed, is that correct?

MR. PILLETS: Yes, at least one of which was armed, and also for kidnapping.

THE COURT: And the Commonwealth, however, only proposes, if permitted, to use the last which is a crime of burglary and the auto larceny.

MR. PILLETS: Correct.

N.T. Vol. 1, p. 308.

Again the trial court provided no meaningful discussion of this factor. Little more was done than to enumerate prior convictions of the defendant and strike the "balance" by acknowledging that less than all prior convictions would be introduced. That they were clearly similar to the crimes for which he is now being charged and would tend to create in the minds of the jury the impression that because Appellant had committed this type of crime in the past, he has committed the present crime, was completely ignored by the trial court.

As to the third factor:

THE COURT: The Third requirement is the age and circumstances of the defendant—the defendant is how old?

MR. LUMBIS: Thirty-two.

THE COURT: Thirty-two years of age. The circumstances of the defendant, as far as I know, is that he is obviously incarcerated without bail, has been and apparently during the pendency of this trial and depending upon the outcome, will continue to be.

N.T. Vol. 1, pp. 308–09.

This was the extent of discussion on factor Three. Merely stating the age of the appellant and where he is presently residing falls far short of a meaningful exercise of discre-

tion relative to this factor. The proper inquiry should have been whether the prior crimes were committed as a minor.

As to the fourth factor:

THE COURT: Fourth is the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witness through which his version of the events surrounding the incident can be presented.

It would appear to the Court that the essential incidents involved in this case are known, if at all, to two people, and one of which is allegedly the defendant and the other is allegedly Mr. Alexander, as to the essential elements of the actual killing.

To the extent that the Commonwealth's case rests in large measure upon Mr. Alexander and in view of the fact that the law provides that information coming from him comes in a sense from a corrupt source.

The Commonwealth *may* not have available to it a lot of evidence concerning this case. On the other hand I also recognize that the defendant is in a similar predicament in that he has indicated an alibi defense and has further indicated that he has been unable to identify those who could support his alibi.

MR. KOSTELANSKY: Judge, I have one other thing, in addition to the homicide there are other charges, the theft, kidnapping are the things dealing with articles and the Commonwealth has offered, even in the suppression hearing, testimony with regard to that, other than James Alexander, so we are not balancing only one charge, there are several other charges that the defendant is charged with.

THE COURT: Well, on the major charge against you, that essentially is going to be decided by two people. There may be other collateral evidence or circumstantial evidence which comes from the traveling together, whatever might have been seized, but essentially it appears the Commonwealth's case—correct me if I'm wrong—is based upon Mr. Alexander.

MR. EICHORN: In a large measure, your Honor, yes, sir, that is a fair statement.

THE COURT: Can the defense offer to me any other alternative that the Commonwealth would have to directly impeach the credibility of the defendant as regards the alleged homicide other than, let's say, Mr. Alexander's testimony, if they are not permitted to use this conviction.

MR. KOSTELANSKI: They have essentially what is circumstantial evidence which will be presented. I am not aware of any other direct evidence the defense is going to offer in this case, testimony that was not presented her [sic] today. The Commonwealth has witnesses who will indicate that they started out together, at least based on the police report that I have been provided, by Mr. Alexander as well as Mr. Strong together and tie it to the yellow T-shirt which has been identified along the way by various people, some of which the Court has had the opportunity to hear by virtue of the suppression hearings that were held here, in addition to the circumstances as part of the criminal history and the arrest and the testimony of Officer Hill and the references that are going to be made in the presentation that Mr. Strong presented the Texas and Pennsylvania identification when questioned as to his identity. There was the victim's identification that he had upon him, either in the bag—I can't recall if he took it out of or off the person or in the bag that he discovered the wallet which was the victim's and those circumstances there, the gun, those kind of items.

So I think when you weigh all those factors first the case is much more than James Alexander alone. It is true on the one issue but there's circumstantial evidence which I'm going to be arguing that will corroborate his testimony.

Of course, it's the only position of the defendant is only his own testimony of the defense of the charges as it stands right now. As I indicated to the Court I think it's a fair statement to make at this time, a fair assumption

on anybody's part that that is not going to change unless there's a major miracle and I don't expect that.

THE COURT: All right. I am satisfied on the basis of the record presented to me that the 1975 conviction of this defendant for burglary and larceny of an automobile presents Bighum offenses; and, I am also satisfied that the Commonwealth—or satisfied that the burden, that the probative value of the evidence of those convictions as it bears on the credibility of the defendant as a witness outweighs the prejudicial effect it could have upon the jury and I think that the need for the evidence in this case overcomes any inherent potential it might have to prejudice and, accordingly, the motion to preclude the Commonwealth from using those offenses for impeachment purposes should the defendant testify is denied.

N.T. Vol. 1, pp. 309–12. (Emphasis added)

No discussion was had to the fifth, extremely important factor, the existence of alternative means of attacking the defendant's credibility is present. As to the discussion of the fourth factor, the trial court determined that there was a *possibility* that the case would consist of the conflicting testimony of Appellant and Alexander. As such, the Court weighed what it perceived to be a standoff in favor of the Commonwealth.

From this review, I find that the trial court's exercise of discretion in determining the propriety of admitting Appellant's prior conviction was woefully inadequate. The court failed to even recognize the fact that the conviction sought to be introduced was almost *nine years old*, a factor, I concede, the *Randall* majority would now also discredit. Nor did it take into account whether other means were available for attacking Appellant's credibility, an important factor since he was the only one to testify on his own behalf during the trial. Where a defendant's own testimony is the only means by which he can present his version of the truth before the jury, we have stressed that "... it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior

conviction." *Roots,* 482 Pa. at 41, 393 A.2d at 368, quoting *Com. v. Bighum,* 452 Pa. 554, 567, 307 A.2d 255, 263 (1973).

Using the above analysis, I would hold that it was error to allow Appellant's prior 1975 conviction for robbery to be introduced for the purpose of impeachment in his trial. Under the law applicable at the time of trial, the Commonwealth failed to meet its burden of showing that the need for that evidence outweighed its inherently prejudicial nature and further because the trial court failed to adequately evaluate and balance the factors set forth in *Roots* in allowing the evidence to be admitted.

For the foregoing reasons, I have no other alternative but to dissent.

NIX, C.J., joins in this dissenting opinion.