574 A.2d 590

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Robert P. BRYANT, Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 1990.

Decided May 10, 1990.

Alonzo Burney (Court-appointed), Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On March 31, 1987, a jury convicted appellant, Robert P. Bryant, of murder of the first degree and, in a separate sentencing hearing, the same jury sentenced appellant to death. Post trial motions were filed and denied. Appellant was formally sentenced and this direct appeal followed.

██ Although appellant does not allege that the evidence is insufficient to sustain the verdict against him, this Court is required in capital cases to review the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find every element of the crime beyond a reasonable doubt. *Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479 (1989).

██ Viewed in accordance with our standard, the evidence presented at trial established the following facts. In November, 1983, prison authorities at the State Correctional Institution at Pittsburgh, acting upon information provided by an inmate named Abe Chapman, found appellant, also an inmate, to be in possession of marijuana. Prison authorities placed appellant in the prison's Restrictive Housing Unit (RHU) for a period of 120 days. When appellant was released from RHU, he stated to the guard who had found the marijuana that he knew that it was Abe Chapman who had "snitched" on him and that he would "take care of it." (N.T. 3/27/87 at 200). The same guard testified that appellant, on at least three other occasions made retaliatory remarks against Chapman, stating at one point that "every dog will have his day." *Id.*

On the morning of May 15, 1984, appellant and another inmate, Larry Greer, entered Abe Chapman's cell as Chapman lay in his bed. Greer, who weighed between 195 and 200 pounds, held Chapman who weighed 130 pounds, while

appellant used an eight-inch long homemade knife to stab Chapman in his chest, back, face and leg. Fifteen stab wounds were inflicted, several of which punctured the victim's lungs, causing severe internal hemorrhaging and resulting in Chapman's death.[1] In the frenzy of the attack, appellant also inflicted errant stab wounds upon himself and Greer. Blood which was consistent with Greer's blood type was splattered on a pair of Chapman's trousers hanging in the cell and on the sleeve of the jacket worn by appellant at the time.

Joseph Hill, an inmate housed in the same cellblock as Chapman, testified that on this same morning of May 15, 1984, Greer and appellant were running toward him as he left his cell for breakfast. Hill noticed blood dripping from Greer's arm. As appellant reached Hill's location, he thrust the knife he was carrying into Hill's hand and told Hill to get rid of it (N.T. 3/26/87 at 73). Hill placed the knife in a bag which he disposed of in a trash can on his way to breakfast. A prison guard who observed Hill placing the bag in the can testified that he thought it odd that Hill did not just toss the package in the can, but rather, "placed" it there. (N.T. 3/26/87 at 170). The bag was later retrieved when the guard was notified of Chapman's murder and remembered Hill's careful placing of the package in the trash.

Appellant and Greer, meanwhile, continued their flight. Greer fled to the shower area where prison authorities later found blood consistent with Greer's blood type on the floor. Appellant entered his cell and was seated on a stool with a handkerchief wrapped around his hand when another inmate, Joseph Ezzo, stopped to inquire whether appellant was going to his prison job that morning. According to Ezzo's testimony, appellant answered that he was not, after which, appellant volunteered that he had killed Chapman. (N.T. 3/26/87 at 113). At that point, prison authorities had

1. A prison guard officer who investigated the murder testified that Chapman was found on the floor of his cell lying on a blanket completely saturated with blood.

been alerted to Chapman's murder and had ordered inmates back into their cells. When an officer of the prison guards passed in front of Ezzo's cell shortly thereafter, he was informed by Ezzo of appellant's statement. The officer then went to appellant's cell and requested that appellant show him his hand. A one-inch gash was observed on the palm of appellant's hand. Based upon the foregoing, we conclude that there is sufficient evidence to sustain the verdict against appellant.

 Appellant's first argument is that the trial court erred in denying his pretrial motion to dismiss the criminal homicide charge against him on the ground of prior prosecutorial misconduct. Appellant had been previously tried and convicted for Chapman's murder in April, 1986. A new trial was granted, however, after a potentially prejudicial police report was sent out with other exhibits for the jury to consider during deliberations. Appellant argues that the report, which was never introduced into evidence, reached the jury as a result of prosecutorial misconduct. Appellant has also raised a separate but related issue of whether his retrial should have been barred by the constitutional guarantee against double jeopardy.

The police report in question contained a statement by an inmate that he had seen appellant and Greer in Chapman's cell on the morning of the killing. When, in the first trial, the trial judge received a note from the jury foreman inquiring whether the report should have been included with the other exhibits in the jury's possession, the trial judge instructed the jury to disregard the report. A hearing was then held in chambers to determine why the report was sent out with the jury. During that hearing, the prosecutor explained that the inmate who had given the statement to police refused to testify. The report was then placed in a file with statements of other witnesses who would not be testifying at trial. During trial, one of those other witnesses decided that he would testify, causing the prosecution to bring the file into court. The defense was notified at that time that the witness would be testifying.

The minute clerk stated that when he gathered up the exhibits to be sent out with the jury, the report was among those exhibits. Although the defense moved for a mistrial, defense counsel stated that he did not feel that there had been any type of intentional action by any source to have the report go out with the jury. (N.T. 4/15/87 at 681). The trial judge found that there was no evidence of any prosecutorial misconduct and denied the motion for a mistrial. After the jury returned a verdict in favor of the Commonwealth, and after post trial motions were filed, the trial judge granted a new trial based on the possibility that the jury may have been prejudiced by the report.

Before appellant's second trial, defense counsel filed his pretrial motion for dismissal asserting that the prosecutorial misconduct involving the above-described police report incident was so outrageous that a second trial would violate appellant's right not to be held in double jeopardy. Double jeopardy, as it relates to prosecutorial misconduct, will attach only where the prosecutorial misconduct is calculated to trigger a mistrial. *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987). Here, the trial judge found that there was no such prosecutorial misconduct, and the record amply supports the court's holding. Thus, the trial court's denial of appellant's motion for dismissal based on prosecutorial misconduct and double jeopardy was correct.

■ Appellant's next argument is that it was error for the trial court to deny appellant's request to act as co-counsel. It is well established that a criminal defendant has a constitutional right to present his own defense at trial. *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There is no constitutional right, however, to act as co-counsel. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). The decision as to whether a defendant may act as co-counsel is within the sound discretion of the trial court. *Id.* The record before us provides no basis for finding an abuse of that discretion.

■ Appellant also argues that the trial court erred in permitting him to represent himself since he had spent his entire adult life in prison and was incapable, per se, of an intelligent and knowing waiver of his right to counsel. The procedure to be followed when a defendant seeks to waive his right to counsel is provided in Pa.R.Crim.P. 318(c) as follows:

(c) **Proceedings Before a Judge.** When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.

The record reveals that the trial judge in the instant case conducted an extensive colloquy. During that colloquy, appellant was repeatedly advised of the hazards of representing himself. The trial judge pointed out to appellant that he should not rely on the fact that he had been through the entire prior trial on this particular charge and thus may have gleaned something from that experience. (N.T. 3/25/87 at 53). Appellant was advised that he would be bound by the same level of knowledge as a person who is trained in the law and would be expected to abide by all the normal rules of procedure. (*Id.* at 62). When the trial judge asked appellant whether he felt that he could represent himself as well his attorney could, appellant acknowledged that he was not a professional but insisted that he had the "experience and knowledge" to represent himself. (N.T. 3/25/87 at 56). Appellant, during the course of the colloquy, stated affirmatively that he understood the risks involved in waiving his right to counsel. The record fully supports, therefore, a finding that the trial judge complied with Pa.R.Crim.P. 318(c) and that appellant made a knowing, voluntary and intelligent waiver of counsel regardless of the number of years appellant had been incarcerated.[2]

2. Appellant did not represent himself for the entire trial. In the guilt determining phase of the case, after cross-examining all but one of the Commonwealth's witnesses, appellant developed an alleged dental problem and insisted that he was no longer able to conduct his own

■ Appellant next argues that the trial court erred in admitting into evidence testimony relating to his possession of marijuana while in prison, claiming that prior criminal acts of a defendant are not admissible. While evidence of a defendant's prior crimes is not generally admissible, certain exceptions have been recognized by this Court. *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989). Establishing a motive is one of these exceptions. *Id.* The Commonwealth sought to prove at trial that appellant had a motive for killing Abe Chapman. Chapman had informed prison authorities about appellant's possession of marijuana and, as a result of this possession, appellant was disciplined. Appellant subsequently made numerous statements that he wanted to get even with Chapman. Thus, appellant's possession of marijuana and the subsequent disciplinary action by prison officials were relevant in establishing a motive.

■ Appellant's next argument is that his case should have been dismissed due to an alleged violation of Rule 1100 of the Pennsylvania Rules of Criminal Procedure. Rule 1100, which has since been amended, provided at the time of appellant's offense:

> Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days *from the date on which the complaint is filed* (emphasis added).

The complaint in appellant's case was filed on August 30, 1984; under the rule in effect at the time, the latest "normal" date for commencement of trial was February 26, 1985.[3] Appellant contends, however, that he should have been brought to trial by November 28, 1984. Appellant asserts that the initiation of the aforementioned disciplinary

defense. Appointed counsel, who had been acting as stand by counsel, represented appellant from that point in the proceedings.

3. Appellant was not tried until April 2, 1986. This date is not in contention since appellant had filed a notice of appeal to Superior Court after his November, 1984 motion to quash based on double jeopardy was denied by the trial court. The effect of this appeal was to divest the trial court of authority to proceed and to act as an automatic supersedeas of the operation of Rule 1100. *See* Pa.R.A.P. 1701(a); *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981).

proceedings by prison authorities on June 1, 1984 was the functional equivalent of filing a criminal complaint. The unequivocal language of Rule 1100 provides no basis for such an interpretation.

Appellant next alleges trial court error in permitting testimony of threatening statements made by appellant to a prison guard about Abe Chapman. Appellant maintains that the statements were vague, unsubstantiated, remote in time and prejudicial. Evidence to prove motive, intent, plan, design, ill will or malice is relevant in a criminal case. *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982). Evidence of appellant's threatening statements was properly admitted to demonstrate the existence of intent and ill will on the part of appellant.

Appellant's next argument is that the trial court should have instructed the jury on involuntary manslaughter. The Pennsylvania Crimes Code, defines involuntary manslaughter as follows:

(a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

There was no evidence presented at trial which, in any way, meets this definition. It is well established that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980). Consequently, it was not error for the trial court to to refuse appellant's request for a jury instruction on involuntary manslaughter.

Appellant next asserts that he was deprived of a fair trial because a death-qualified jury is, in his opinion, more prone to convict than a jury which has not been death-qualified. Both the United States Supreme Court and this Court have rejected the claim that death-qualified juries are conviction-prone. *See Lockhart v. McCree*, 476 U.S.

162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989); *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Thus, appellant's argument is without merit.

■ Appellant's next argument is that it was error for the trial court to deny his request for a bifurcated jury. Appellant maintains that having one jury for the guilt determining phase of trial and another jury for the penalty phase would eliminate the need for death-qualification and its alleged potential prejudice. Section 9711(a)(1) of the sentencing statute provides as follows:

(a) **Procedure in jury trials.—**

(1) After a verdict of murder of the first degree is recorded and before *the jury* is discharged, the court shall conduct a separate sentencing hearing in which *the jury shall* determine whether the defendant shall be sentenced to death or life imprisonment (emphasis added).

It is clear from a reading of the language in this section that the same jury which renders the verdict of murder in the first degree is the same jury which is to determine whether the sentence is to be death or life imprisonment. *See also, Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989); *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987).

■ Appellant next argues that he should have been permitted to waive a jury for the sentencing hearing. Appellant's rationale is that the need to death-qualify a jury in the guilt determining stage of trial would be eliminated by a jury waiver at the sentencing phase since the trial judge, not the jury, would hear the evidence in the sentencing phase and determine the penalty. The language of § 9711(a)(1), quoted above, makes it clear not only that the jury be the *same* for both phases of the proceeding, but that it be a *jury* who determines the penalty. "[T]he *jury shall determine* whether the defendant shall be sentenced to death or life imprisonment." 42 Pa.C.S.A. § 9711(a)(1)

(emphasis added). Appellant has apparently sought to create a blend of the procedure used in death penalty jury trials and the procedure used in death penalty nonjury trials. Section 9711(b) provides:

**(b) Procedure in nonjury trials and guilty pleas.—**

*If the defendant has waived a jury trial or pleaded guilty,* the sentencing proceeding shall be conducted before a jury impaneled for that purpose unless waived by the defendant with the consent of the Commonwealth, in which case the trial judge shall hear the evidence and determine the penalty in the same manner as would a jury (emphasis added).

Since appellant neither waived a jury trial nor pleaded guilty, the trial court had no authority to permit appellant to waive a jury for the sentencing phase of the proceedings.[4]

In the penalty phase of the proceedings, the jury heard evidence that appellant was serving two life sentences at the time he killed Abe Chapman.[5] The jury found the existence of the following aggravating circumstance specified in the sentencing statute: "... the defendant was undergoing a sentence of life imprisonment ... at the time of the commission of the offense." 42 Pa.C.S.A. § 9711(d)(10). The jury found the existence of no mitigating circumstance specified in the sentencing statute[6]. A

---

4. Appellant raises two additional issues. These issues, which allege trial court error in "allowing the death penalty" (Brief for Appellant at 1) and in refusing appellant's request for sequestration of the jury, are without foundation either in the record or in the law.

5. Appellant had been convicted of murder of the first degree and sentenced to life imprisonment in 1971. After assaulting a prison official in 1974, a second sentence of life imprisonment was imposed. (The Pennsylvania Crimes code makes the penalty for assault by a life prisoner "the same as the penalty for murder of the second degree." 18 Pa.C.S.A. § 2704.)

6. Defense counsel did not present any evidence of mitigating circumstances; however, the following possible mitigating circumstances were called to the attention of the jury by both the trial judge and the prosecution: 1) the lack of a significant history of prior convictions; and 2) extreme mental or emotional disturbance. The trial judge also instructed the jury that, pursuant to § 9711(e), it could consider any

jury must return a verdict of death if it finds the existence of at least one aggravating circumstance specified in the sentencing statute and the existence of no mitigating circumstance. 42 Pa.C.S.A. § 9711(c). This jury returned the verdict of death.

This Court is required to affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant. 42 Pa.C.S.A. § 9711(h)(3).

We have examined the record and find that the sentence of death was a product of the evidence and not the product of "passion, prejudice or any other arbitrary factor." In addition, the evidence was sufficient to establish beyond a reasonable doubt the aggravating circumstance that appellant committed murder while serving a life sentence.

Based upon data supplied by the Administrative Office of Pennsylvania Courts (*see Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984) and the Appendix attached thereto), we conclude that the sentence of death imposed upon appellant is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the circumstances of the crime and the character and record of the accused.

For the foregoing reasons, we sustain the conviction and affirm the judgment of sentence.[7]

other mitigating matter concerning the character or record of the defendant or the circumstances of the offense.

7. The Prothonotary of the Western District is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor. 42 Pa.C.S.A. § 9711(i).