Larry FARMER, Petitioner–Appellant,

v.

Gerald HOFBAUER, Warden, Respondent–Appellee.

No. 99–2040.

United States Court of Appeals, Sixth Circuit.

Jan. 10, 2001.

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

In 1996, Larry Farmer was found guilty, but mentally ill, on a state charge of first-degree premeditated murder. After the district court denied his petition for habeas

corpus relief, he appealed to this court. He now challenges his conviction on the grounds that he was denied his constitutional right to a fair trial because the prosecutor allegedly engaged in repeated and prejudicial misconduct. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Procedural history

In February of 1993, Farmer struck Felix Casarez in the head with a pool cue after Casarez refused Farmer's demand that he leave the Gay Nineties Bar in Muskegon Heights, Michigan. Casarez died as a result of the blow. Farmer, who had a lengthy history of mental illness, argued that he was legally insane at the time of the offense and was therefore incapable of forming the specific intent necessary to commit murder. At trial, Farmer and the prosecution presented conflicting evidence of Farmer's mental capacity. After four days of deliberation, the jury returned a verdict of guilty, but mentally ill. The Michigan Court of Appeals affirmed Farmer's conviction. In 1997, the Michigan Supreme Court denied Farmer's application for leave to appeal.

Farmer then filed a timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. He raised five issues in support of his petition. The magistrate judge recommended that the petition be denied, and the district court adopted the magistrate judge's recommendation. Judgment was entered against Farmer on August 3, 1999. Farmer then filed a Request for a Certificate of Appealability to proceed with his habeas petition to this court. The district court granted the certificate as to all issues raised in the petition. Farmer has limited his request for relief, however, to the issue of prosecutorial misconduct.

### B. Factual background

Farmer is an African–American with a twenty-year history of mental illness and repeated diagnoses of paranoid schizophrenia. For several weeks before the incident in question, Farmer had been acting in a disturbed manner. On the morning of February 13, 1993, Farmer was arrested at the local high school in Muskegon Heights for yelling obscenities. He was ticketed for trespassing and released. Shortly thereafter, Farmer went to the Good News Bookstore, asked the African–American manager if he had a gun or knife, and then walked behind a Caucasian customer and struck him in the face with his fist. Farmer then proceeded to the Gay Nineties Bar, where he told a patron, Felix Casarez, to leave. When Casarez failed to respond, Farmer swung a pool cue at Casarez, striking him in the head. The force of the blow was so strong that it broke the pool cue and caused Casarez to fall from his bar stool onto the floor. Casarez eventually died from his head injuries.

Farmer then left the bar and went to Barberini's Liquor Store, where he approached a female customer. He asked her the color of her eyes, said "Oh good, green," and told her to leave because the store was not selling any merchandise to white people that day. When she refused to leave, he grabbed her and began slapping her in the face. The store owner reacted by brandishing a knife and telling Farmer to release the customer. He did so and exited the store.

After the store owner notified the police, Farmer was arrested and transported to the Muskegon Forensic Center. Medical personnel at the Center found Farmer incompetent to stand trial. The state trial court then ordered Farmer to be treated.

He was restored to competency several months later with the assistance of psychotropic medication and individual psychotherapy.

At trial, clinical psychologist Arthur Marroquin from the Muskegon Forensic Center testified that Farmer met the criteria for both mental illness and legal insanity, and recommended that Farmer be considered not responsible for his actions. Farmer had told Dr. Marroquin that he believed himself to be on a God-appointed mission to attack Caucasian people. Prior to returning home to Michigan, Farmer had been hospitalized in California until he signed himself out against medical orders. Although his family had attempted to have him rehospitalized because of his increasing confusion and threatening behavior toward them and others, the Muskegon Community Mental Health Agency had determined that he did not require involuntary commitment.

Two days before the attack on Casarez, Farmer had caused a disturbance at a local restaurant. When the police responded, he told them they were devils and that he was God. Farmer identified himself as God at the time he was booked following his arrest. When the jail nurse called the Muskegon Community Mental Health Agency, however, she was informed that Farmer had been evaluated and did not need to be hospitalized.

The prosecutor offered the testimony of three witnesses on the issue of Farmer's sanity, two of whom were examiners with the Muskegon Community Mental Health Agency. They had examined Farmer when his family had attempted to have him committed, but had concluded that he was not a danger to himself or others and was not in need of medication. The third witness was a deputy sheriff who testified that, on the first day of trial, Farmer was well-behaved until the jurors were brought in, at which point he began speaking loudly of Satan. A verdict of guilty, but mentally ill, was returned by the jury. Farmer was subsequently sentenced to life imprisonment without the possibility of parole.

## II. ANALYSIS

### A. Standard of review for habeas petitions under AEDPA

■ A petition for a writ of habeas corpus is the exclusive federal remedy available to a state prisoner who challenges the constitutionality of his confinement. *See* 28 U.S.C. § 2254; *Prieser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In order to prevail, a petitioner must demonstrate that his custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

■ Because Farmer filed his application for a writ of habeas corpus on October 8, 1997, the Antiterrorism and Effective Death Penalty Act of 1996 governs his case. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The standard of review imposed by AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams (Terry) v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (granting habeas relief where the defendant was denied his constitutionally guaranteed right to effective assistance of counsel when his trial lawyers failed to investigate and present substantial mitigating evidence to the sentencing jury). In *Williams,* the Supreme Court held that the writ may be granted if the state court identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to

the prisoner's case. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521. The *Williams* Court went on to observe that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 1522. As the Court explained, we may not issue a writ of habeas corpus under the "unreasonable application" standard simply because we conclude in our independent judgment that the state court's decision applied the law erroneously or incorrectly. *See id.*

◼ In keeping with the delicate balance of mutual respect and common purpose of state trial proceedings and federal habeas review, we "limit the scope of federal intrusion into state criminal adjudications and ... safeguard the States' interests in the integrity of their criminal and collateral proceedings." *Williams (Michael) v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000) (holding that AEDPA bars evidentiary hearings in federal habeas actions only if the failure to develop the factual basis of a claim in the state court was the result of a lack of diligence or some other fault attributable to the petitioner). Pursuant to 28 U.S.C. § 2254(d), we presume that a state court's factual findings are correct unless the petitioner demonstrates by convincing evidence that the facts are erroneous. *See Sumner v. Mata,* 455 U.S. 591, 592–93, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). Where the state court findings have support in the record, those findings must control, even though the federal habeas court might have rendered contrary findings that also would have support in the record. *See Wainwright v. Goode,* 464 U.S. 78, 85, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). In short, the writ of habeas corpus is an

"extraordinary remedy," and relief is reserved for those few individuals who have been "grievously wronged" during the course of state court proceedings. *See Brecht v. Abrahamson,* 507 U.S. 619, 620–21, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

**B. The district court was correct in determining that the prosecutor's alleged misconduct did not deprive Farmer of his constitutional rights**

◼ Farmer contends that the prosecutor committed acts of misconduct sufficient to warrant habeas relief. He argues that misconduct occurred when the prosecutor allegedly (1) made improper remarks regarding the implications of a not guilty verdict by reason of insanity, and (2) disparaged Farmer in a variety of ways, including a comparison of Farmer to Adolph Hitler. The Michigan Court of Appeals rejected these two arguments on the merits. In analyzing claims of prosecutorial misconduct on habeas review, our role is limited to determining whether the alleged misconduct rises to the level of a constitutional deprivation. To support habeas relief, the prosecutor's statements must be "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir.1999).

◼ Our analysis of alleged prosecutorial misconduct is guided by the principles set forth in *Pritchett v. Pitcher,* 117 F.3d 959 (6th Cir.1997) (denying habeas relief where the prosecutor's remarks had little potential for misleading the jury). When weighing the extent of prosecutorial misconduct, we must consider the following four factors: (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused, (2) whether the remarks are isolated or extensive, (3) whether the state-

ments were deliberately or accidentally placed before the jury, and (4) the strength of the competent proof to establish the guilt of the accused. *See Serra v. Mich. Dep't. of Corr.,* 4 F.3d 1348, 1355–56 (6th Cir.1993) (holding that the prosecutor's improper reference to the petitioner's prior conviction was not so prejudicial as to cause his trial to be fundamentally unfair). To constitute the denial of a fair trial, prosecutorial misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as . . . to prejudice the defendant." *Pritchett,* 117 F.3d at 964 (internal citations omitted).

█ During his closing argument, the prosecutor questioned the credibility of Farmer's expert witnesses and urged the jury not to adopt their conclusions regarding Farmer's alleged insanity. Otherwise, the prosecutor argued, "[w]e should never come here because we'll just let the doctors make all the decisions for us. We'll all just throw up our hands and say we're going to let some guy at a mental health facility . . . make our decisions for us: the decisions to whether we're going to keep him, whether he meets criteria to keep him or whether they should let him out." Farmer contends that these comments, along with the prosecutor's assertion that Farmer "want[ed] off and he's claiming insanity" and asking to be "excused from the crime of murder," amounted to an attempt to mislead the jury as to the penalty for an insanity verdict. The Michigan Court of Appeals, however, concluded that this argument was without merit, specifically finding that "the prosecutor never mentioned the possible penalty defendant could receive if acquitted of the charged crime." Farmer has failed to demonstrate by convincing evidence that this finding is erroneous. *See Sumner v. Mata,* 455 U.S.

591, 592–93, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

Furthermore, when read in their entirety, the prosecutor's remarks regarding Farmer's sanity fail to rise to the level of a denial of Farmer's right to due process. The statements were vague, brief, and disjointed. When the trial judge cautioned the jury that a lawyer's comments are not evidence, any error in the prosecutor's remarks was further blunted.

█ Farmer next contends that the prosecutor's improper and prejudicial disparagement of Farmer denied him his right to due process. During his closing argument, the prosecutor claimed that Farmer was manipulating the doctors and jurors so that they would find him insane. Because Farmer's counsel failed to object at trial to the prosecutor's remarks, the Michigan Court of Appeals declined to review this claim on the merits. Instead, it concluded that no miscarriage of justice would result from its decision not to review the claim, and that Farmer had not been denied effective assistance of counsel due to the failure to make a timely objection to these alleged instances of misconduct.

█ In the absence of "cause" and "prejudice," federal courts are barred from undertaking a habeas corpus review of state-court decisions that rest on independent and adequate state grounds. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (holding that a Florida rule requiring that a petitioner's confession be challenged at trial or not at all was an adequate state ground for barring a claim on habeas corpus that the petitioner's confession should not have been admitted into evidence). State procedural rules, such as Michigan's contemporaneous objection requirement, have been deemed to constitute independent and adequate state grounds. *See*

*Coleman v. Thompson,* 501 U.S. 722, 740–44, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that defense counsel's failure to file a timely notice of appeal in state court was an adequate state ground for denying a petitioner's habeas corpus claims). If a petitioner procedurally defaults on a claim in state court, federal courts will deny review of that claim unless the petitioner can demonstrate "cause" for the procedural default and actual "prejudice" resulting from the constitutional error. *See id.* at 750.

 Because Farmer has been unable to demonstrate a justifiable reason for his default, he is not entitled to a review of these remarks by the prosecutor. *See id.* at 754 (stating that habeas petitioners carry the burden of demonstrating cause and prejudice in order to overcome procedural default). Farmer attempted to show "cause" by claiming that his counsel was ineffective for failing to object. Attorney error that amounts to ineffective assistance of counsel can constitute "cause" under the cause and prejudice test. *See Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir.1996) (holding that defense counsel's failure to object to very serious prosecutorial misconduct amounted to ineffective assistance of counsel, and that such ineffective assistance was "cause" for the defendant's failure to comply with Tennessee's rules for preserving a claim of prosecutorial misconduct). In order to constitute sufficient cause to overcome the procedural default, however, a counsel's performance must be constitutionally deficient. *See id.* at 785.

 In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court set forth a two-part test for determining whether the performance of counsel is constitutionally deficient. First, a defendant must show that the attorney's errors were so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *See id.* at 687. Failure to object to prosecutorial misconduct can constitute such a grave error. *See Washington v. Hofbauer,* 228 F.3d 689, 708 (6th Cir.2000) (holding that an attorney's "failure to object comprised ineffective assistance of counsel provid[ing] the required 'cause.'"). Second, a petitioner asserting an ineffective assistance of counsel claim must affirmatively prove that counsel's deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 693. To show "prejudice" under *Strickland,* the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

 As the district court concluded, the Michigan Court of Appeals reasonably determined that Farmer had failed to establish either prong of the *Strickland* test. Because the comments were subject to a responsive argument by defense counsel and were limited in scope and length, Farmer's counsel committed no error by failing to object. Even if counsel had objected, the district court properly determined that Farmer had failed to show a reasonable probability that the outcome would have been different. The allegedly disparaging remarks made by the prosecutor, therefore, do not rise to the level of denying Farmer his due process.

In addition to the prosecutor's general disparaging remarks concerning Farmer's sanity, Farmer claims that he was prejudiced when the prosecutor allegedly compared him to Hitler. At trial, evidence was adduced that Farmer harbored a deep hatred for whites, which motivated his attack on the deceased. In an argument that even the government on appeal characterized as inarticulate and incoherent, the prosecutor argued:

And the other thing we lost sight of is that mental illness doesn't create insanity. A delusion does not create insanity. If you sit back and you look at a person, do you ever hear the term "a faulty premise" or a "faulty basis?" If you look at a—if you will—put it in the context of a jealous husband that thinks that his wife has been out with someone else. It's not true. There's no basis for that. It [sic] what's in his mind. Then he acts upon that and does some act that's bizarre because of it. Is that an excuse? Or do we look past that? Do we look at his actions of intention? Do we look at his deliberateness when he does an illegal act? Do we follow it up to the point of the violation of the law, or do we just stop because we want to say somebody's delusional, therefore—

If that's the case, we've got a whole slew of history that is premised upon faulty information. We have issues of control where people do not think because what they're going forward with is right, that there should be any consequences for their actions. And if you look all the way back to World War II and Hitler, there's a man and a whole country that felt what they were doing was right. Were they all insane?

Farmer contends that this reference to Hitler amounted to a highly inflammatory, prejudicial analogy between Hitler's attempts to eradicate the Jews and Farmer's hatred of Caucasians, which deprived him of a fair trial. Farmer's counsel timely objected to the Hitler reference, and has properly preserved this issue for our review.

When reviewing these remarks by the prosecutor, the Michigan Court of Appeals again found that Farmer's claim lacked merit. The Michigan court stated that "[t]he record does not support defendant's contention that the prosecutor specifically compared defendant to Hitler." It further noted that defense counsel immediately objected to the remark concerning Hitler, and that the court instructed the prosecutor to retract the statement. The Michigan Court of Appeals concluded that "even if the prosecutor's comments could be construed as such, any prejudice to defendant was cured by the trial court's instruction to the prosecution to retract the remark." Although the Magistrate Judge's Report and Recommendation characterized the prosecutor's comments as "undoubtedly inflammatory," the report concluded that the trial judge's curative efforts must be considered and that the prosecution had presented competent evidence of Farmer's guilt and sanity.

Farmer maintains that this court's decision in *Martin v. Parker*, 11 F.3d 613 (6th Cir.1993), compels us to grant him a new trial. In *Martin*, the court issued a writ of habeas corpus where the prosecutor repeatedly referred to the defendant's prior bad acts in direct contravention of the trial court's orders and made a number of highly inflammatory remarks concerning Martin. Among the prosecutor's many prejudicial comments was a prolonged, deliberate attempt to equate the defendant to Hitler. *See id.* at 615–16. In his closing argument, the prosecutor also stated that Martin was "one of the most obnoxious witnesses you'll ever hear," and characterized him as a "disturbed individual" with "some real problems." *Id.* at 615. Martin had been convicted of sexually abusing his adopted son of Korean descent. When granting the petition, the court noted that because cases involving sexual abuse "typically turn on the relative credibilities of the defendant and the prosecuting witness, ... a strict adherence to ... appropriate prosecutorial conduct is required to ensure a fair trial." *Id.* at 616–17. It went on to observe that had the evidence of Martin's guilt been over-

whelming, the errors in isolation might have been harmless. *See id.* at 617. The court further noted that its holding was based on the cumulative effect of the prosecutor's repeated prejudicial, inflammatory remarks that permeated the opening statement, cross-examination, and closing arguments, as well as the wrongly introduced evidence of uncharged prior bad acts.

■ Unlike in *Martin,* the prosecutor's comments in the present case were fleeting, the evidence of Farmer's guilt and sanity was adequate for conviction, and the prosecutor did not engage in repeated acts of misconduct throughout the entire trial. We thus find Farmer's reliance on *Martin* to be unpersuasive. The prosecutor's single reference to Hitler, moreover, was not so egregious as to render Farmer's trial fundamentally unfair. Looked at in context, the reference seems designed only to point out that an entire country and its leader can have delusions, and yet not be considered legally insane. The remark was isolated, and the court ordered the prosecutor to retract the argument. Furthermore, the Michigan Court of Appeals reasonably found that the reference was not so prejudicial as to show a reasonable probability that the result of the proceeding would have been different but for the remark. *See Strickland,* 466 U.S. at 694.

In light of the totality of the circumstances regarding the prosecutor's alleged misstatements, and because Farmer failed to demonstrate that the Michigan Court of Appeals's decision on this issue was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," habeas relief is not justified.

## III. CONCLUSION

For all the reasons set forth above, we AFFIRM the district court's denial of Farmer's petition for a writ of habeas corpus.