**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leigh Ann STEINKOETTER,**
**Defendant–Appellant.**

**No. 79–5346.**

United States Court of Appeals,
Sixth Circuit.

Argued June 2, 1980.
Decided Oct. 24, 1980.

J. Martin Hadican, St. Louis, Mo., for defendant–appellant.

Albert Jones, U. S. Atty., Timothy J. Gilenwater, Asst. U. S. Atty., Louisville, Ky., for plaintiff–appellee.

Before EDWARDS, Chief Judge, WEICK and JONES, Circuit Judges.

EDWARDS, Chief Judge.

Steinkoetter appeals from her second conviction for possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. The firearm, as to which the jury found her guilty of possession in both the first and the second trial on this charge, was a homemade bomb fabricated by her husband with her assistance, designed for the purpose of killing defendant Leigh Ann Steinkoetter's stepmother in order to procure an inheritance from her.

Steinkoetter's basic defense at both trials upon this charge was that she was acting entirely under duress from her dangerous husband. While there was evidence from which the jury could have found duress in both trials of the possession charge, the jury did not do so.

The judgment and sentence in the first trial was reversed by this court, 593 F.2d 747, because of prejudicial prosecutorial misconduct in the opening statement by the United States Attorney which referred to bombing and murders resulting from them which bombings and murders were not the subject of the indictment, nor of any proofs offered at trial.

Following this second trial, we are now confronted by the argument that we should reverse because of similarly prejudicial prosecutorial misconduct in the closing argument made by the same United States Attorney which included these comments:

> "John could tell the police about the bombs and what happened, but Leigh Ann, I think you will all agree, is not a stupid person, a clever, diabolical woman." (T.549).

> "How can she now come in like Pontius Pilate and wash her hands of it? How can she like Judas Iscariat sit in there and enjoy refreshments with a lady whose death right then is being planned, and a bomb being planted?" (T.593, 594).

In the controlling case upon prosecutorial misconduct at the criminal trial, *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the United States Supreme Court held that the prosecutor could "strike hard blows but not foul ones." We believe that on this record, the first of the sentences above describing defendant as a clever diabolical woman would pass the *Berger* test as a hard blow but not a foul one. The references in the second paragraph, however, to Pontius Pilate and Judas Iscariat convey strong prejudicial overtones and have no place in a case being presented by a direct representative of the United States Department of Justice, particularly in a case which has previously been reversed for new trial solely on the ground of the deliberate introduction of inadmissible and highly prejudicial materi-

al. In pursuance of the standards set by the United States Supreme Court in *Berger v. United States,* this Circuit reiterates that it will enforce the ban on "foul blows" even where to do so requires still another trial of the same case.

█ We do not ignore appellant's contention that she should have been exempted from the second trial on the possession count and must now be freed from any charge because after her first trial in which a jury found her guilty of possession and failed to reach agreement on two other counts of transporting the same "firearm" that she was alleged to have possessed, she was subsequently retried on the two transportation counts and found not guilty.

We measure this argument made by appellant against the language of the Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970):

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to *"examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."* The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal. [emphasis added]

In our view, the jury which found appellant not guilty on the two counts of trans-

portation could easily have done so because all of the time the bomb was being transported from St. Louis County, Missouri, to the home of the stepmother in McCracken County, Kentucky, the evidence showed that John Steinkoetter was carrying a .357 magnum pistol and the evidence of his disturbed conduct and threats might well have been sufficient to convince the jury that on that trip, appellant Steinkoetter was indeed under duress.

Different allegations and different proofs, however, are involved in Count I alleging possession of the bomb. This is not a charge which was included in the two transportation counts on which she was found not guilty. *Cf. Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The evidence allowed the most recent jury to find that appellant, on arrival at the stepmother's home, spent 45 minutes with her stepmother while her husband was fabricating a booby trap bomb in her garage designed to blow her to pieces. The jury could have found from this record that appellant Steinkoetter spent those 45 minutes aiding and abetting her husband in his possession of the bomb by her friendly but deceptive discourse with her stepmother. Additionally, the jury could have concluded that as to those 45 minutes with a telephone handy, in the house and alone with the intended victim, Mrs. Steinkoetter could easily have warned the victim or the police or both. The jury could also have concluded that during that period, she was not under coercion.

Our review of this case serves to convince us that appellant Steinkoetter's constitutional right to be free from double jeopardy was not violated under these circumstances. The *Blockburger* different fact test is clearly met here. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). We also hold that the prosecution is not collaterally estopped from retrying her on the possession charge.

The judgment and sentences of the District Court are vacated for the reasons previously stated and the case is remanded for further proceedings.