**George L. MARTIN, Petitioner–Appellant,**

v.

**Phil PARKER, Respondent–Appellee.**

**No. 92–4137.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1993.

Decided Dec. 13, 1993.

Rehearing Denied Feb. 16, 1994.

John B. Gibbons (argued), Daniel T. Todt & Associates, Cleveland, OH, for petitioner-appellant.

George L. Martin (briefed), pro se.

Donald G. Keyser, Asst. Atty. Gen. (argued and briefed), Columbus, OH, for respondent-appellee.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.

PER CURIAM.

Petitioner George L. Martin, a pro se Ohio prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus. Martin contends that prosecutorial misconduct denied him a fair trial in an Ohio county court. For the following reasons, we reverse the district court's holding and grant the habeas corpus petition.

In January 1989, a Cuyahoga County, Ohio grand jury returned a three-count indictment against Martin, charging him with rape, endangering children, and sexual battery. Alleging that Martin sexually abused an adopted son of Korean descent, the indictment resulted from the son's report of abuse to hospital personnel after the son's attempted suicide. At the time of the alleged incidents, the boy was between thirteen and fifteen years of age.

Following a three-day trial, a jury convicted Martin of all charges. On September 15, the trial court sentenced Martin to a term of ten to twenty-five years imprisonment on the rape count, which was merged with the endangerment count, and a consecutive two-year term of imprisonment on the sexual battery count. Subsequently, the Ohio Court of Appeals affirmed the trial court's judgment, and the Ohio Supreme Court overruled Martin's application for leave to appeal.

On February 18, 1992, Martin filed a petition for a writ of habeas corpus that raised eight points of error: (1) prosecutorial misconduct; (2) erroneous admission of an unqualified expert opinion; (3) elicitation of inadmissible hearsay to rebut a charge of recent fabrication; (4) insufficient evidence; (5) ineffective assistance of counsel; (6) improper jury instruction on the element of force in the rape charge; (7) improper review by the state appellate court; and (8) deprivation of due process due to the cumulative effect of the errors. The district court referred the case to a magistrate judge who recommended dismissal of the writ because the majority of the alleged errors were not, in fact, errors, and any errors committed did not deprive Martin of a fair trial. Martin filed timely objections to the Report and Recommendation, and the district court conducted a *de novo* review of his petition. On September 29, the district court adopted the magistrate's recommendation and dismissed Martin's petition for a writ of habeas corpus. This timely appeal followed.

Before reaching the merits of Martin's appeal, this Court must first consider whether Martin has exhausted his available state remedies. Under 28 U.S.C. § 2254(b), exhaus-

tion of "the remedies available in the courts of the State" is required before a federal court can grant an application for the writ of habeas corpus. Because the state here did not contest exhaustion and because Martin did exhaust his state remedies concerning the substantial issues, we conclude that "the interests of comity and federalism will be better served by addressing the merits forthwith." *Cobb v. Perini*, 832 F.2d 342, 344–45 (6th Cir.1987) (quoting *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987)), *cert. denied*, 486 U.S. 1024, 108 S.Ct. 1998, 100 L.Ed.2d 230 (1988).

Our review of Martin's petition for a writ of habeas corpus petition is necessarily restricted. This Court gives complete deference to state court findings that are supported by the evidence. *Lundy v. Campbell*, 888 F.2d 467, 469–70 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). Moreover, while we review *de novo* the district court's refusal to grant a habeas petition, we review the district court's factual findings only for clear error. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989).

Martin initially alleges on appeal that prosecutorial misconduct denied him a fair trial. Specifically, Martin claims that the prosecutor's opening and closing arguments and cross-examination were prejudicial and that the prosecutor wrongly introduced evidence of uncharged acts and of his character. After considering the cumulative effect of these errors, we agree that due process was not satisfied in this case. In the aggregate, the effect of these errors "was so prejudicial as to strike at the fundamental fairness of the trial." *United States v. Parker*, 997 F.2d 219, 222 (6th Cir.1993).

Prior to trial, defense counsel filed a motion in limine to determine the admissibility of other acts testimony. In granting the motion, the court ordered the prosecutor not to introduce such evidence until he secured the trial court's approval. Despite the court's order, the prosecutor's opening argument alluded to the possibility that Martin had abused other children in the household by claiming that his son had attempted sui-

cide "to protect the family" and to do "what the mother wouldn't do, to protect the kids." The prosecutor furthered this innuendo during his opening statement by claiming that Martin's adopted daughter, Cathy Garcia, was the victim of "a series of unusual physical punishments." Over Martin's objection, the prosecutor also elicited testimony on direct examination from Garcia that on one occasion Martin had "punched" her in the face and knocked her to the floor, in the mistaken belief that she had done something wrong. Through his comments and questions, the prosecutor attempted, in direct contravention of the trial court's order, to show that Martin acted in conformity with his character as a parent who physically, verbally and sexually abused his children.

In addition, the prosecutor exhibited a propensity for highly prejudicial comments throughout the trial. During cross-examination, the prosecutor asked Martin whether he had abused his adopted daughter and whether Martin had a different standard of treatment for his adopted children than for his natural children. He also asked Martin whether he had used certain racial epithets in reference to each of his adopted children. The prosecutor further inquired into the genetics involved in raising Martin's pure-bred German Shepherds, suggesting that Martin applied the same genetic and purity standards to his own mixed-race family.

During his closing statement, the prosecutor called Martin a "dictator" and stated that Martin was the "most incredible witness you'll ever hear, one of the most obnoxious witnesses you'll ever hear." The prosecutor also characterized Martin as a "disturbed individual" with "some real problems." Finally, drawing connections between the case at trial and Jesse Owens' gold-metal-winning performance in front of Adolf Hitler, the prosecutor directly compared Martin to Hitler:

> And in the middle of the park [across the street from the courthouse is] ... a statue of a Clevelander, Jesse Owens, who, there's some point to be made, similarities in this case. Fifty-three years ago at this time of year—it was in the summer time—

he was in Berlin.... And he was in front of an individual in a very hostile crowd and a very racist environment, bigoted environment, the most bigoted, racist environment, probably, ever in the existence of the world, modern world, at any rate.

And here is this guy, comes in from the streets of Cleveland, small kid from East Tech.... He comes right into the center of Nazi Germany, right prior to the war. Right in the stands watching this is the fuhrer himself, the goose-stepping goof up there, sitting there, who believes in this superiority issue also. He believes in this genetic thing and that the Aryans were the superior race. And he had all kinds of nasty little sayings to say about blacks. And here is this guy taking on the—the predicted champions, which the favorites were some Aryans, as he called them, in the events, and this Owens was there.

And he was a soft-spoken guy.... But, on that day and—or over the course of that week, and fifty-three years ago he spoke. He spoke in his actions when he went out on that track and field there and did his events. He won four Olympic gold medals and he humiliated this big-time fuhrer sitting up there with all his silly, ridiculous theories, humiliated him, as convincingly as the allies did nine years later when they defeated him in the war. This man himself went out there without ever saying a political word or giving a speech, proved how wrong this man was chased the little fuhrer out of the stadium so he didn't have to shake hands with a black man.

This guy stood up. The fuhrer had some ceremony and he was congratulating the winners personally, but he ran ... out of the stadium the first time Owens won because he didn't want to hand the gold medal. He didn't want to give that handshake to a black man and admit the fallacy of his ridiculous theories.

In the same courageous manner that guy acted, the way that guy stood up, the way the guy stood up to that fuhrer, we see similarities in this case. Here we have this 15–year–old, 16–year–old kid now, comes in this courtroom and makes one of the most courageous and tough moves you ever want to see. He comes in here and testifies about something he doesn't want to do, something he has no interest in doing, and hurting his father.

Trial Transcript at 472–76.

Such unseemly comments by the prosecutor compromised Martin's right to a fair trial. This court grants habeas corpus relief for prosecutorial improprieties where the prosecutor's statements are so egregious as to render the entire trial "fundamentally unfair." *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982). As we have recognized, inflammatory prosecutorial remarks "invoke emotions which may cloud the jury's determination of [the defendant's] guilt." *United States v. Payne,* 2 F.3d 706, 712 (6th Cir. 1993). Here, we find especially deplorable the prosecutor's attempt to suggest to the jury through cross-examination and final argument a similarity between Martin and Adolf Hitler. Such a comparison creates an overwhelming prejudice in the eyes of the jury. *See United States v. North,* 910 F.2d 843, 895 (D.C.Cir.) (favorably comparing defendant's strategy to that of Adolph Hitler "[u]nquestionably inflammatory"), *modified in part,* 920 F.2d 940 (D.C.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *United States v. Steinkoetter,* 633 F.2d 719, 720–21 (6th Cir.1980) (prosecutor's comparison of defendant to Pontius Pilate and Judas Iscariot mandates reversal). Also highly improper were the prosecutor's deliberate references to Martin as a "dictator," a "disturbed individual," a man who has some "real problems" and "one of the most obnoxious witnesses you'll ever hear." These unwarranted characterizations reach the level of impermissible "foul blows." *Steinkoetter,* 633 F.2d at 720–21.

While the charged offenses are heinous in all respects, even the most guilty defendant is entitled to a fair trial. Cases involving sexual abuse exert an almost irresistible pressure on the emotions of the bench and bar alike. Because such cases typically turn on the relative credibilities of the defendant and the prosecuting witness, however, a strict adherence to the rules of evidence and

appropriate prosecutorial conduct is required to ensure a fair trial.

Here, the prosecutor's improper comments and his repeated references, despite the trial judge's warning, to Martin's prior bad acts combined to deny Martin his right to a fair trial. Had the evidence of guilt been overwhelming in this case, the errors in isolation may have been considered harmless. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (holding that an error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"). However, where, as here, the evidence of guilt is at best conflicting, egregious prosecutorial misconduct of this kind rises to the level of a constitutional deprivation, denying the defendant a fundamentally fair trial. *See Payne,* 2 F.3d at 715–16. Accordingly, Martin is entitled to a new trial on all charges.

Having granted Martin's petition for a writ of habeas corpus on the ground of prosecutorial misconduct, we need not address Martin's remaining claims. Accordingly, we reverse the decision of the district court and grant the writ of habeas corpus, with orders that the State of Ohio either release the petitioner or retry him within ninety days.

WELLFORD, Senior Circuit Judge, dissenting.

I respectfully dissent from my brother judges in this close case. First, I state my agreement with their conclusion that the state prosecutor was guilty of misconduct in several respects, and that this misconduct constituted an excess of prosecutorial zeal and overreaching.

I agree, moreover, that it is appropriate for us to consider this habeas corpus petition on its merits since the state has not contested the question of exhaustion of state remedy.

I disagree, however, with any intimation that introduction of or reference to evidence about Martin's generally abusive conduct towards his other child or children constituted an error of which we must take cognizance. An erroneous admission of evidence by a state trial judge in a habeas corpus proceeding is usually not a basis for federal relief. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). *See Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"). Petitioner is not constitutionally entitled to a perfect or an error-free trial, particularly with regard to evidentiary rulings of the state judge. *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Accordingly, while an error was undoubtedly committed in this case, it was not so significant as to require this court to reverse the district court's decision.

With regard to the admission of evidence regarding other wrongful activity by the petitioner-defendant relating to his charged criminal offenses, I believe the rule is that such evidence may be admissible if probative of "intent, preparation, or plan" on the part of a criminal defendant. *See United States v. Gessa,* 971 F.2d 1257 (6th Cir.1992). *See also* Fed.R.Evid. 404(b); *Waters v. Kassulke,* 916 F.2d 329 (6th Cir.1990). I believe that the questioned testimony of the victim's adoptive sister about the petitioner-defendant's abusive conduct towards her was at least arguably admissible. It was not a basis for finding prejudicial error or even prosecutorial misconduct. This evidence and the prosecutor's reference to it were not, in my view, a basis for considering the trial fundamentally unfair.

We, therefore, must consider whether the prosecutor's errors were so egregious and prejudicial that Martin was deprived of a fundamentally fair trial. I am persuaded that the prosecutor's conduct and activity, although certainly improper and not to be condoned, did not constitute reversible error under all the circumstances. I would, therefore, affirm Martin's conviction.