25 F.3d 1047
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John F. BOYLE, Jr., Petitioner-Appellant,
v.
Anthony J. BRIGANO, Warden, Respondent-Appellee.
 No. 93-3823.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1994.
 
 Before: MARTIN, RYAN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dr. John F. Boyle, Jr., a pro se Ohio prisoner, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Boyle was convicted in the Richland County Court of Common Pleas of murdering his wife, Noreen Boyle, and abusing her corpse. Boyle now raises four grounds for habeas relief: (1) insufficiency of the evidence to support his convictions; (2) the trial court's refusal to allow examination of the victim's corpse by defense experts; (3) prosecutorial misconduct; and (4) ineffective assistance of counsel. For the following reasons, we affirm the district court's denial of the writ.
 
 
 2
 In December 1989, John Boyle, who is a physician, and his wife Noreen were engaged in divorce proceedings. These proceedings included financial negotiations regarding a substantial property and alimony settlement for Noreen's benefit, as well as an action by John seeking to have Noreen's adoption of their daughter, Elizabeth, declared invalid. The couple also have a natural son, Collier Boyle.
 
 
 3
 During the divorce proceedings, John Boyle purchased a new home in Erie, Pennsylvania with the aid of his pregnant girlfriend, whom he represented to be his wife, and began to relocate his medical practice to Erie from Mansfield, Ohio. Boyle insisted on gaining possession of the Erie house by January 1, 1990. On December 4, 1989, Boyle contacted the realtor and inquired about what was under the basement floor, in case he wanted to make any alterations to the house. On December 19, Boyle rented an electric jackhammer for use on the weekend of December 29. The Ohio Court of Appeals summarized the subsequent events as follows:
 
 
 4
 Early in the morning of December 31, 1989, appellant's son was awakened [in the Mansfield home] by a scream and the sound of two thuds. The next morning his father told him that his mother had left on a vacation. The following day, appellant went to Erie. On January 2 or 3, appellant was seen at the home of his girlfriend's uncle: later police discovered concrete from the Erie, Pennsylvania home on the uncle's property.
 
 
 5
 On January 4, 1990, appellant purchased green indoor/outdoor carpeting similar to the carpet later found covering the [concrete] floor over Noreen Boyle's grave. On January 8, 1990, appellant arranged for shelving to be built over the site where Noreen Boyle was buried. The contractor noticed that the basement windows were open in spite of the cold outdoor temperatures. On January 25, 1990, police from both Ohio and Pennsylvania exhumed Noreen Boyle's body from beneath the basement floor. The coroner testified she had died from suffocation due to a plastic bag covering her head, and blunt force injury to her head.
 
 
 6
 Joint Appendix at 115-116.
 
 
 7
 In January 1990, an Ohio grand jury returned an indictment charging Boyle with one count of aggravated murder, under Ohio Rev.Code Sec. 2903.01(a), and one count of felony abuse of a corpse, under Ohio Rev.Code Sec. 2927.01(b). At trial, Boyle denied murdering his wife. He testified that "someone else must have murdered her, broke into the home, tore out the basement carpeting and shelves, broke the cement floor, dug the grave and buried Noreen, cemented over the hole, replaced the carpet and shelving, and removed the debris." J.A. at 116-117. A jury ultimately convicted Boyle on both counts of the indictment. The Richland County Court of Common Pleas sentenced him to a term of life imprisonment for the murder, with no possibility of parole for twenty years, to run consecutively to an eighteen-month term for abuse of a corpse. After exhausting his state court remedies, Boyle filed the petition for a writ of habeas corpus, under 28 U.S.C. Sec. 2254, denied by the district court below.
 
 
 8
 On appeal, Boyle first contends that the evidence against him is entirely circumstantial and is insufficient to support his conviction. Boyle takes particular issue with the identification of the corpse as that of Noreen Boyle. The Allegheny County coroner, Dr. Michael Sobol, testified at trial that the dental records of the twenty-five teeth he examined from the corpse matched those of Noreen Boyle perfectly, and that these matches conclusively established the identity of the deceased. The location of the body in the Erie home, the lack of evidence of forced entry, and the identification of a Rolex watch recovered from the body as belonging to Noreen Boyle were additional identifying factors. Under Jackson v. Virginia, 443 U.S. 307, 319 (1979), the question we must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under this standard, we conclude that the evidence presented was sufficient to support the identification of the corpse as that of Noreen Boyle, and thus Boyle's convictions as well.
 
 
 9
 Boyle also argues that the trial court improperly failed to act upon his motion to allow an independent examination of the body by a defense expert. Boyle alleges that the State of Ohio had the body buried within nine days of his arrest, soon after the coroner's examination, without obtaining any identification by friends or family. Boyle frames this contention as a violation of his confrontation clause rights under the Sixth Amendment, citing Delaware v. Van Arsdall, 475 U.S. 673 (1986). According to Boyle, his defense expert would have proffered medical evidence that the body was not, in fact, that of Noreen Boyle, providing a means of attacking the coroner's identification. Boyle, however, had ample opportunity at trial to mount such an attack. The coroner took the stand at trial, identified the body through dental records, and was subjected to a thorough cross-examination by defense counsel with respect to potential bias and certainty of the identification, including a treatment of the above facts. Thus, Boyle's Sixth Amendment confrontation argument must fail.
 
 
 10
 We note, in addition, that Boyle did not adduce any evidence showing that the state buried the body in bad faith, as a means of precluding access to it. See Arizona v. Youngblood, 488 U.S. 51, 56 (1988) (failure to preserve physical specimens on which test results were based, if not in bad faith, does not preclude admission of those results, particularly where, in light of procedures used, chances that specimens would have exculpated defendants were slim) (citing California v. Trombetta, 467 U.S. 479, 488-90 (1984)). As there is no evidence of bad faith, and because additional physical tests performed on the body almost certainly would not have exculpated Boyle in light of the dental identification, we conclude that the second assignment of error, the denial of an independent examination, is without merit.
 
 
 11
 Boyle further asserts that prosecutorial misconduct denied him a fair trial. Specifically, Boyle points to the prosecutor's introduction of detailed character evidence, for impeachment purposes, in the form of direct testimony by seven witnesses in violation of Ohio Rule of Evidence 608(b). Boyle also states, correctly, that the prosecutor improperly vouched for the credibility of Collier Boyle during closing argument, and referred to John Boyle as a "liar" and a "thief." See, e.g., Martin v. Parker, 11 F.3d 613, 616 (6th Cir.1993) (inflammatory remarks may cause prejudice in eyes of jury); United States v. Krebs, 788 F.2d 1166, 1176 (6th Cir.) (prosecutor's vouching for the credibility of a witness is improper), cert. denied, 479 U.S. 930 (1986). The state courts and the district court considered the prosecutor's actions to be harmless error under Chapman v. California, 386 U.S. 18 (1967).
 
 
 12
 The United States Supreme Court recently clarified the harmless error analysis to be conducted in habeas cases, stating that the standard is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). As the district court noted, the impeachment testimony of the seven witnesses, although improper, was at worst only cumulative. These witnesses testified regarding Boyle's marital infidelity and misrepresentations about his past military service. Boyle himself, however, had previously taken the stand and admitted to these actions on cross-examination. Additionally, with respect to much of the improper "name-calling" by the prosecutor during closing argument, the district court noted that the prosecutor did not actually mislead the jury, having made these comments in the context of specific references to Boyle's inconsistent testimony at trial. Although the prosecutor's statements were unprofessional at best, we do not believe that they had a substantial, injurious effect in determining the jury's verdict. The evidence of Boyle's guilt set forth above, although circumstantial, is overwhelming, and the statements did not "have a tendency to mislead the jury." Sizemore v. Fletcher, 921 F.2d 667, 671 (6th Cir.1990) (identifying factors to take into account in weighing prosecutorial misconduct).
 
 
 13
 Finally, Boyle argues that his trial counsel was ineffective. In order to establish ineffective assistance of counsel, Boyle must demonstrate both deficient performance, resulting in serious error, and prejudice resulting in a reasonable probability that, had it not been for counsel's unprofessional errors, the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Lockhart v. Fretwell, 113 S.Ct. 838, 845 (1993) (O'Connor, J., concurring) (Strickland test applied in cases where defendant is legally entitled to the objection in question). Boyle identifies the following errors by counsel: (1) failing to object to the improper introduction of character evidence; (2) failing to object to the prosecutor's statements during closing argument; and (3) a general failure to defend the case aggressively, as evidenced by counsel's total of only six objections during trial.
 
 
 14
 The magistrate judge observed in his report and recommendation to the district court that "[d]efense counsel's reticence to object is noticeable in the record." J.A. at 257. Counsel should have objected to the improper character evidence and the prosecutor's closing argument. However, even assuming that counsel's performance was deficient, there is no reasonable probability that the outcome would have been different without this deficiency. As we have stated previously, the proof of Boyle's guilt is overwhelming, and the context in which counsel's performance occurred militates against the conclusion that Boyle's trial was "fundamentally unfair." Lundy v. Campbell, 888 F.2d 467, 473 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990); Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982).
 
 
 15
 For the foregoing reasons, we affirm the district court's denial of the writ.