**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0996n.06

**No. 09-3957**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

THOMAS RECTOR,

      **Petitioner-Appellant,**

**v.**

**JEFFERY WOLFE, WARDEN,**

      **Respondent-Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

_____ /

**BEFORE:**    **CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.**[*]

    **CLAY, Circuit Judge**. Petitioner Thomas Rector, an Ohio state prisoner, appeals an order by the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 after he was found guilty of four counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).

    For the reasons stated below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**I.    Allegations of Child Sexual Abuse**

    On November 1, 2000, a grand jury indicted Petitioner on five counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b). The Ohio Court of Appeals provided the following recitation of the facts underlying Petitioner's conviction:

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Paul Vogley married Carrie Rosenberger in 1992. That same year, the couple gave birth to their only child [B.V.]. Unfortunately, the marriage did not last and the two were divorced in 1994. Subsequently, Carrie was married twice more, the third time to Rector. She and Rector resided in Carrollton, Ohio.

At the time of Paul and Carrie's divorce, the court ordered standard visitation. However, the couple arranged their own agreement on visitation. In 1997, the couple agreed to let the child live with Paul in North Canton, Ohio, and retained their visitation by mutual agreement. Pursuant to that agreement, Carrie would have the child about every other weekend, on alternative holidays, and for nine or ten weeks during the summer. For instance, the child was with Carrie and Rector during Thanksgiving 1999, portions of Christmas 1999, and the summer of 2000.

On September 13, 2000, Paul came home from work and saw the child had cold sores on her mouth. The child had been with Carrie and her husband, Rector, the weekend before. He asked her about the cold sores and the child began crying. She then told her father Rector had licked her "pee-pee" and digitally penetrated her when she was visiting her mother in Carrollton. Paul called the police who arranged to have the child examined at the Akron Children's Hospital. On September 20, 2000, a nurse-practitioner at that hospital conducted that examination. She found no physical signs of abuse.

After this examination and police interview of the child, Carrie, and Rector, the Carroll County Grand Jury returned an indictment which charged Rector with five counts of rape occurring at various times between October 1999 and October 2000. Before trial, the State moved to amend the indictment to reflect that the first count occurred over September 8, 9, and 10, 2000 rather than October 8, 9, and 10, 2000. The trial court reviewed the Grand Jury testimony and denied the motion to amend. The State then nolled that count. At the close of the jury trial, Rector was found guilty of counts two through five. Subsequently, the trial court held a sentencing hearing and sexual predator adjudication hearing. After that hearing, the trial court classified Rector as a sexual predator, sentenced him to the maximum, four ten-year sentences, and ordered those sentences be served consecutively.

*State v. Rector*, No. 01 AP 758, 2002 WL 32098116, at * 1 (Ohio Ct. App. Dec. 31, 2002).

## II.     The Trial

Petitioner's trial commenced on March 26, 2001. On that same day, Petitioner's step-

daughter, eight year old B.V., testified that she was raped by Petitioner on four separate

occasions—on or about October 1999, November 20–27, 1999, December 24, 1999, and July 1–August 30, 2000. B.V. stated that Petitioner would enter her bedroom at night, pull down her pants, and inappropriately touch her private area, including digital penetration and licking. After the first incident, B.V. testified that Petitioner threatened to kill her and her family if she ever told anyone what happened. Petitioner's trial counsel objected to the line of questioning as leading and requested a sidebar discussion. The court noted the objection in the record but overruled counsel's objections.

B.V. also testified that she told her father about the sexual abuse by Petitioner after her father noticed that B.V.'s lips were red. B.V. stated that her father became suspicious about her red lips and asked B.V. whether anyone else besides her mother and grandmother kissed her on the lips. B.V. then told her father everything that happened with Petitioner. According to B.V., her father took her to the hospital for a medical examination.

On cross examination, Petitioner's counsel asked B.V. questions about the exact dates of the alleged sexual incidents, but B.V. could not recall when any of the incidents happened. Petitioner's counsel then proceeded to ask questions about B.V.'s trial preparation. B.V. testified that she practiced answering questions about the alleged sexual incidents with the prosecutor on at least four different occasions. On one occasion, B.V. recalled the prosecutor giving B.V. a document that contained key points of her testimony. B.V. stated that she took the paper home and memorized it prior to trial.

On March 27, 2001, Petitioner's counsel submitted a motion requesting the trial court to strike all of B.V.'s testimony. Petitioner's counsel argued that B.V.'s testimony did not represent

her present recollection of facts and that B.V. was given "statement of facts which she admitted or testified to that she had memorized, practiced, and then repeated for the Court and for the jury." The court, while sympathizing with Petitioner's counsel argument, overruled the motion on the basis that the practice of preparing a witness to testify is necessary prior to any trial and there was no evidence that B.V. gave a prior inconsistent statement. Later that day, a jury convicted Petitioner on four counts of rape and he was sentenced to five years imprisonment on each count.

Petitioner appealed his convictions to the Ohio State Appellate Court and raised nine claims. On January 2, 2003, the appellate court dismissed eight of the nine claims. The court granted in part Petitioner's appeal and remanded the case to the trial court for further proceedings. *See Rector*, 2002 WL 32098116, at * 9–10. The Ohio Supreme Court denied leave to appeal the dismissed claims. On April 2, 2003, Petitioner filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) and alleged that his appellate counsel rendered ineffective assistance. The state appellate court denied Petitioner's application to reopen, stating that his claims were without merit. Petitioner moved for reconsideration, and the state appellate court denied his application to reconsider as untimely.

On October 22, 2003, Petitioner appealed to the Ohio Supreme Court, which dismissed the appeal, holding that his claim failed to involve a substantial constitutional question. Petitioner then filed a petition for writ of certiorari in the United States Supreme Court on April 20, 2004. The Supreme Court denied review on June 28, 2004.

On April 25, 2007, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 2254, and asserted seven

grounds for relief. The magistrate judge issued a report and recommendation pursuant to Local Rule 72.2(b)(2) and recommended that the district court deny the petition. Petitioner filed an objection to the magistrate's report and recommendation. On June 23, 2009, the district court issued its decision to adopt in part and modify in part the magistrate's report and recommendation and denied the petition. The district court also declined to issue a certificate of appealability. Petitioner timely filed his notice of appeal on July 22, 2009. On September 2, 2009, Petitioner filed an application for a certificate of appealability on his prosecutorial misconduct claim. On April 20, 2011, this Court granted Petitioner's certificate of appealability.

## DISCUSSION

### I.  Standard of Review

We review Petitioner's application for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under AEDPA we deny a writ of habeas corpus for a claim adjudicated on the merits in a state court "unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (internal citations and quotation marks omitted).

**II.      Prosecutorial Misconduct**

A prosecutorial misconduct claim raised in a habeas petition requires the "narrow [standard of review] of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Therefore, "[t]he relevant question is whether the [prosecutor's] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181(quoting *Donnelly*, 416 U.S. at 643). We consider the prosecutor's statements within the "context of the entire trial." *Donnelly*, 416 U.S. at 639.

**A.      Petitioner's Failure to Testify**

Petitioner argues that the prosecutor engaged in misconduct during closing argument by referring to his decision not to testify at trial. Petitioner claims that such comments brought unnecessary attention to the fact that his defense rested solely on the basis of B.V.'s testimony at trial, and therefore rendered his trial unfair and violated his due process rights.

During closing argument, the prosecutor made the following statements regarding Petitioner's decision not to testify.

> Did any of the witnesses tell you why [B.V.] would make up a story that Tom Rector raped her. You didn't hear that story. You won't hear that story because there is no story of why [B.V.] would make up such a statement.
>
> There has not been on shred of testimony of why she would make this up.
>
> You never heard them tell you that anything that [B.V.] went through prior to testifying here, anything she reviewed prior to testifying here, was inconsistent with anything that she had said before.
>
> What you never heard was anything out of anyone during this trial that would say why [B.V.] would lie.

The Ohio Court of Appeals found that "the prosecutor's comments during closing arguments did not vouch for the witness's credibility. Rather, these remarks were an attempt to illustrate why the witness has no motive to lie." *Rector*, 2002 WL 32098116, at *10.

The state appellate court's decision regarding Petitioner's claim was not an unreasonable application of federal law given the level of deference we are required to afford state court proceedings pursuant to AEDPA. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Although the prosecutor's remarks may be construed as indirectly or impliedly referring to Petitioner's decision not to testify, this is not the only possible interpretation, and the state appellate court's construction was not unreasonable.

The crux of the prosecution's closing argument focused on Petitioner's guilt and how the evidence presented at trial established that Petitioner committed the alleged sexual acts. In *Darden*, the Supreme Court found that improper and prejudicial prosecutorial statements may be cured when the evidence strongly supports a finding of guilt. *Darden*, 477 U.S. at 182. In this case, the prosecutor summarized Petitioner's alleged conduct in order to show the jury that the prosecution had met its burden of establishing Petitioner's guilt beyond a reasonable doubt. The prosecutor's comments did not attempt to draw attention to the fact that Petitioner did not testify at trial. Rather, the remarks supported the prosecution's theory that B.V. was a credible witness and that substantial evidence supported her allegations of sexual abuse.

In addition, the trial court provided a curative instruction to the jury to mitigate any prejudice caused by the alleged prosecutorial misconduct. The judge instructed the jury that they could only review the evidence presented at trial, and not the "indictment, opening statement, or closing

argument" of the parties. The court also instructed the jury not to consider the fact that Petitioner did not testify. The judge stated that "it [was] not necessary that the defendant take the witness stand in his own defense" because "[h]e has a constitutional right not to testify." The judge also stated that "the fact that the defendant did not testify must not be considered for any purposes." The state appellate court's interpretation of the prosecutor's comments and its conclusion that they did not rise to the level of misconduct were not unreasonable. Accordingly, its ruling on this issue did not unreasonably apply clearly established federal law, and habeas relief is not warranted.

### B. Improper Character Vouching

In the second instance of prosecutorial misconduct, Petitioner alleges that the prosecutor engaged in improper vouching by commenting on B.V.'s credibility during opening statement. The prosecutor stated that B.V.'s testimony would be "much more important and much more credible" than DNA evidence or other physical evidence. The prosecutor also commented that B.V. was "going to tell [the jurors] the truth" and "she knows she's telling the truth." Petitioner also claims that the statement of "glad I'm on this side" constituted evidence of improper vouching.

We continue to analyze Petitioner's prosecutorial misconduct claim under the standard set forth in *Darden*. *See Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (per curiam). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witnesses's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). Comments are deemed improper if

they are "blunt" or "imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis*, 170 F.3d at 550.

The Ohio Court of Appeals found Petitioner's claims of prosecutorial misconduct without merit because regardless of whether the comments were improper, "they did not render Rector's trial unfair." *Rector*, 2002 WL 32098116, at * 10. In addition, the state court of appeals concluded that the prosecutor's remarks were "fleeting references" rather than "points of emphasis" and the trial court "instructed the jury that opening statements and closing statements are not evidence" to be evaluated by the jury. *Id.*

The state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law. We are concerned that the prosecutor's comments during opening statement were improper because the prosecutor injected her personal beliefs at trial by stating that B.V.'s testimony was more credible than the DNA evidence and that B.V. would speak truthfully. We have previously cautioned against improper vouching, particularly in the context of sexual abuse cases, which almost exclusively rely on the credibility of witnesses:

> Cases involving sexual abuse exert an almost irresistible pressure on the emotions of the bench and bar alike. Because such cases typically turn on the relative credibilities of the defendant and the prosecuting witness, however, a strict adherence to the rules of evidence and appropriate prosecutorial conduct is required to ensure a fair trial.

*Martin v. Parker*, 11 F.3d 613, 616–17 (6th Cir. 1993). The DNA evidence in this case was inconclusive and Petitioner did not testify at trial; therefore, the only witness who could testify to the actual events was B.V. Petitioner's counsel attempted to discredit B.V. by suggesting that the

prosecutor prepared written statements that B.V. memorized and recited at trial and that B.V. could not remember the dates of the alleged incidents.

Regardless of the propriety of the prosecutor's comments, the state appellate court reasonably concluded that the prosecutor's conduct did not result in a fundamentally unfair trial that would violate Petitioner's due process rights as established under *Darden*. The trial judge minimized any potential prejudicial effect on the jury by providing a curative instruction. The judge stated to the jury that they "are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence." The judge also explained to the jury what factors they should consider to assess a witness' credibility.

In addition, the prosecutor limited her comments to her opening statement and there is no evidence that the prosecution continued to refer to B.V.'s credibility throughout the trial. Thus, the prosecutor's conduct was not "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964) (6th Cir. 1997)); *see also Donnelly,* 416 U.S. at 639. The "instances of impropriety" were mainly "isolated from the other sets of remarks and probably were not deliberate." *Francis*, 170 F.3d at 552. For these reasons, we agree with the state appellate court's conclusion that the prosecutor's statements during trial did not render Petitioner's trial fundamentally unfair so as to violate his due process rights, and we deny habeas relief on this claim.

### C.      Cumulative Error

Lastly, Petitioner argues that the cumulative effect of the errors made by the prosecution rendered his trial fundamentally unfair and deprived him of due process. To establish cumulative error, Petitioner must show that "the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004).   As we previously concluded, Petitioner's decision not to testify was never referenced by the prosecution.  Despite evidence suggesting that the prosecution made improper comments about B.V.'s credibility during opening statement, those comments were isolated and not so extensive or deliberate as to deny Petitioner his right to a fair trial or deny him of due process. "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Therefore, we conclude that the cumulative effect of the prosecutor's conduct did not undermine Petitioner's right to a fair trial, and Petitioner is not entitled to habeas relief.

### CONCLUSION

Petitioner has failed to demonstrate how the state appellate court unreasonably applied federal law when it found that the prosecutor's comments did not amount to prosecutorial misconduct.  The prosecutor's remarks during closing argument did not clearly refer to Petitioner's decision to testify.  Moreover, the judge provided an appropriate curative instruction to the jury to disregard such statements.  In addition, although the prosecutor made improper statements regarding B.V.'s credibility during opening argument, the remarks were isolated and not so flagrant as to

render his trial fundamentally unfair. The cumulative effect of the prosecutor's improper comments did not violate due process or deny Petitioner a right to a fair trial. Therefore, because the state court did not unreasonably apply federal law, Petitioner is not entitled to habeas relief on his claims of prosecutorial misconduct.

For these reasons, we **AFFIRM** the district court's order denying the petition for writ of habeas corpus.